[Crim. No. 1258. Third Appellate District.—May 20, 1933.]

THE PEOPLE, Respondent, v. MARGARET BROWNING, Appellant.

Conley, Conley & Conley for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The appellant was convicted of the crime of abortion. A reversal of the judgment is sought on the ground that a portion of the trial was conducted on a holiday; that the court erred in its charge to the jury and in the reception of testimony, and that both the judge and district attorney were guilty of prejudicial misconduct.

The trial began February 27, 1933, and continued from day to day to and including March 2, 1933. For the protection of the banking business of the state of California which was seriously threatened, the Governor proclaimed March 2d, 3d and 4th as public holidays. Neither the court nor counsel heard of this proclamation until after the cause had been finally submitted to the jury for decision. The cause was argued to the jury by respective counsel and the court

delivered its charge to the jury on the morning of March 2d. The deliberations of the jury continued for several hours. During their consideration of the evidence the jury returned into court, and at their request, for the purpose of refreshing their memories, the testimony of several witnesses was read to them by the reporter. About 10 o'clock at night the jury returned its verdict against the defendant. The verdict was received, read and duly declared by the jury in open court. At the request of defendant's attorney the jury was polled. Thereupon, for the first time, the court's attention was called to the fact that March 2d had been previously proclaimed a holiday and the defendant then objected to the recording of the verdict on the ground that it was therefore void. The objection was overruled. The verdict was recorded. The jury was discharged, and the cause was continued to a subsequent judicial day at which time sentence was duly pronounced. A motion for a new trial upon this and other statutory grounds was made and denied. From the judgment and order denying the motion for new trial the defendant has appealed.

Section 134 of the Code of Civil Procedure provides that "No court, other than the supreme court, must be open for the transaction of judicial business on any of the holidays mentioned in section 10, except for the following purposes:

"1. To give upon their request, instructions to jury when deliberating on their verdict.

"2. To receive a verdict or discharge a jury.

"3. For the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature.

"Injunctions and writs of prohibition may be issued and served on any day. . . . "

Section 10 of the Political Code declares that "Holidays, within the meaning of this code, are every Sunday, . . . and every day appointed by the President of the United States, *or by the governor of this state* for a public feast, thanksgiving or holiday, . . . "

Section 10, *supra*, was amended March 6, 1933, as an urgency act, defining special holidays as distinguished from general holidays, and authorizing all court proceedings, sessions of school and business transactions to be performed on such special holidays which are not specifically prohibited

in the proclamation of such holidays. The amendment reads in part:

"Provided that on any day appointed by the President or by the governor as a special or limited holiday all courts, public schools and public offices of this state, . . . shall be open and shall function in their normal and usual manner . . . except only . . . the particular class of business or persons expressly limited or restricted by the provisions of the proclamation appointing or declaring such special or limited holiday."

This amendment was adopted too late to affect the validity of the judgment in the present case. It was not enacted until four days after the challenged proceedings of trial in this case had transpired. Nor does the case of *Vidal* v. *Backs*, 218 Cal. 99 [21 Pac. (2d) 952, 86 A. L. R. 1134], upon which the respondent relies, aid the judgment in this cause. That case was decided by the Supreme Court May 1, 1933. It applied the foregoing amendment to section 10 of the Political Code in support of the validity of a judgment of foreclosure which was made and entered March 8, 1933, two days after the amendment was adopted.

There is no doubt that a judgment of conviction which is pronounced on a holiday over the express objection of an accused person is void. (*In re Smith*, 152 Cal. 566 [93 Pac. 191]; *In re Dal Porte*, 198 Cal. 216 [244 Pac. 355].) But the irregularity of proceeding with judicial transactions on a holiday may be expressly waived, or tacitly waived by failure to object thereto.

We are of the opinion the judgment in the present case is not invalid merely because the cause was argued and the jury instructed on a holiday. The defendant acquiesced in these proceedings and waived her right to a discontinuance of the trial, on account of the holiday, by participating therein and by failing to object thereto until after the verdict had been rendered. (*Walter* v. *Superior Court*, 49 Wash. 1 [94 Pac. 665, 17 L. R. A. (N. S.) 257]; *State* v. *Brownfield*, 160 La. 171 [106 So. 734, 43 A. L. R. 475]; *State* v. *Duncan*, 118 La. 702 [43 So. 283, 11 Ann. Cas. 557, 10 L. R. A. (N. S.) 791]; *State* v. *Foss*, 158 La. 471 [104 So. 211]; *State* v. *Cook*, 78 S. C. 253 [59 S. E. 862, 125 Am. St. Rep. 788, 13 Ann. Cas. 1051, 15 L. R. A. (N. S.) 1013];

*Shepherd* v. *Superior Court,* 54 Cal. App. 673 [202 Pac. 466]; *In re Murphy,* 79 Cal. App. 64 [248 Pac. 1044].)

In the present case it appears that neither the judge of the court nor the parties to the suit were aware of the fact that the Governor had proclaimed March 2d as a holiday until after the cause was submitted to the jury. But it is apparent the defendant had knowledge of the holiday before the verdict was rendered. Defendant's counsel participated in the arguments to the jury and offered instructions which were given to the jury. He was present when the testimony of certain witnesses was read to the jury at their request. With full knowledge of the existence of the holiday he permitted the jury to render its verdict, without objection, speculating on the chance of obtaining a favorable result of the trial. At the defendant's request the jury was polled. For the first time when the clerk was directed to record the verdict, she raised the objection that the proceedings were void. A defendant is estopped from participating and acquiescing in legal proceedings on a holiday, speculating on the recovery of a favorable verdict, and then challenging the validity thereof, for the first time after the verdict has been rendered.

Since the defendant had actual knowledge of the holiday before the verdict was rendered it is immaterial that she may not have had that information at the time the case was argued and the jury instructed. Moreover, all parties are presumed to have had the knowledge of the holiday proclamation. Judicial knowledge of the existence of a holiday and of the executive proclamation thereof are presumed. (Sec. 1875, Code Civ. Proc.; *Poheim* v. *Meyers,* 9 Cal. App. 31 [98 Pac. 65, 66]; *Mullan* v. *State,* 114 Cal. 578 [46 Pac. 670, 34 L. R. A. 262]; *French* v. *Senate,* 146 Cal. 604 [80 Pac. 1031, 2 Ann. Cas. 756, 69 L. R. A. 556]; *State* v. *Superior Court,* 49 Wash. 1 [94 Pac. 665, 17 L. R. A. (N. S.) 257].) In the case of *Poheim* v. *Meyers, supra,* it is said, "Of the existence and effect of these holidays the court must take judicial notice."

The case of *State* v. *Superior Court, supra,* is authority directly in support of the conclusion that the defendant waived her objection to the irregularity of proceedings in the present case. The statute of Washington, with respect to holidays, is exactly like that of California. For the

protection of the banking business in that state the Governor proclaimed a holiday. Upon this holiday the Walter trial proceeded. Additional evidence was admitted and arguments of counsel were made without objection. The cause was submitted and a judgment was subsequently rendered on a judicial day. Upon a writ of review, the Supreme Court held that neither the proceedings nor the judgment were void since the petitioner waived his right to a discontinuance of the trial and acquiesced therein by failing to object to the proceedings on that ground.

So, also, in the Brownfield case, *supra,* where the defendant was tried and convicted of a crime on a holiday, the court held that he waived the irregularity of proceeding with the trial on that day by his failure to object to the continuation of the trial until after the verdict had been rendered. In that case the court quoted with approval from the Duncan case, *supra,* as follows:

"Two questions were presented. . . . The second one was whether an accused could waive the right not to be tried on such a day, and, if so, could he waive it by his silence and inaction? The court decided both questions adversely to the defendant. In that case it was said, "The proceedings on a statutory holiday are not necessarily null. They may be held on that day by consent. Besides, an accused may be concluded by his silence, if he chooses to remain silent when he is represented by counsel amply able to protect his rights."

The foregoing decisions with relation to the doctrine of waiver have been approved by intimation of the California Appellate Court in two cases. In the Shepherd case, *supra,* upon a writ of prohibition, the order of a court granting a new trial was declared void because it was filed by the judge on a Saturday afternoon, which was the last day upon which the court was authorized by the provisions of section 660 of the Code of Civil Procedure to pass upon the motion. But the court said:

"If we were called upon to consider the effect of a court order made and entered on a holiday, but within time, we would not hesitate to hold with the respondent, and say that the action of the trial court resulted in a mere irregularity, which was waived by the subsequent attitude of the petitioners in not calling the attention of the re-

spondent, or of the plaintiffs in the action, to their objection to the procedure until after the time within which the plaintiffs might have appealed from the judgment against them.''

A rehearing of this case was denied by the Supreme Court.

In the case of *People* v. *Maljan,* 34 Cal. App. 384 [167 Pac. 547, 549], on appeal from a judgment of conviction of the crime of embezzlement, the defendant contended he should have been granted a new trial because arguments of counsel were made and instructions were given to the jury on a Saturday afternoon, which was a holiday. The court said:

''The defendant cannot be heard to complain of this, for his attorney, on his attention being called to the fact that the hour of noon had arrived, distinctly and in open court waived the right to object to the trial proceeding into the afternoon, and this is a matter in which the defendant's waiver is binding upon him.''

The Supreme Court also denied a hearing in this case.

*In re Murphy,* 79 Cal. App. 65 [248 Pac. 1044, 1046], upon petition for a writ of *habeas corpus,* the court quoted with approval the foregoing language which was used in the Maljan case, and in determining whether a final judgment which was entered on a judicial day became void by reason of prior judicial proceedings conducted on a holiday, without objection thereto on the part of the defendant, the court held that ''at the time the court entered judgment in this case it had jurisdiction over both the cause and the petitioner, which gives the judgment full validity when questioned upon *habeas corpus* proceedings''.

The authorities appear to concede that a court does not lose jurisdiction of the person of the litigants or of a cause, by the mere intervention of a holiday in the midst of a trial. The conducting of court proceedings upon such nonjudicial day, which proceedings are not specifically excepted from the prohibition of the holiday statute, appears to be considered mere irregularities which may be specifically waived, or tacitly waived by failing to make timely objections thereto. In support of the conclusion that jurisdiction of the cause is not lost by the intervention of a holiday, it will be observed that section 134 of the Code

of Civil Procedure specifically authorizes the performance of certain judicial acts in the course of criminal trials on a nonjudicial day. Juries may be lawfully instructed in the course of their deliberations, at their own request. Verdicts may be received by the court. The recording of a verdict is merely incidental to its rendition. Since a verdict may be lawfully received on a holiday, it follows that it may also be lawfully recorded. There was therefore no merit in the defendant's mere objection to the recording of the verdict. Since the statute specifically authorizes the giving of instructions during their deliberations at the request of the jury, by inference, it sanctions their *deliberations* on a holiday. Furthermore, all functions of a magistrate may be performed in proceedings of a criminal nature. The primary reason for setting apart statutory holidays dates back to the ancient religious lunar month holy day called Shabattum. It was intended to afford an opportunity for rest from labor during which period rites of worship might be observed. The modern Sabbath followed. Other holidays for public festivities and thanksgiving have been added. The modern spirit of holidays confers a privilege to refrain from labor, rather than a command to desist from work in accordance with the doctrine of *dies non juridicus*. The holiday does not oust the court of jurisdiction, and the right to be relieved of the necessity of transacting judicial business on such days may be waived.

The judgment in this case is therefore not void merely because the cause was argued and the jury was instructed on a holiday.

 The appellant asserts that the giving of four instructions to the jury at the request of the prosecution was misleading, confusing and therefore erroneous. We think not. The defendant was indicted and convicted under the provisions of section 274 of the Penal Code, of the crime of using an instrument upon the body of Emily Caton, a pregnant woman, with the intention of procuring a miscarriage. The defendant was not charged with attempting to procure a miscarriage by means of drugs. Section 274, *supra,* makes it a crime to use either instruments or drugs with the intention of procuring a miscarriage. These challenged instructions define the crime which

is prohibited by the statute by employing the language included therein. In effect, they instruct the jury that the crime consists of the use of either drugs or instruments with the intention of procuring a miscarriage. The appellant claims these instructions are erroneous because they wrongfully include the element of a separate offense committed by the use of drugs, and that they are not confined to the crime of intending to procure a miscarriage by means of instruments, with which offense only the defendant was charged.

These instructions were not erroneous. They constitute an effort in the language of the statute to define the crime of "intending to procure the miscarriage of a pregnant woman", which is prohibited by the provisions of section 274, *supra*. When a statute defines a crime and declares that it may be committed by means of one of several specified methods, it is not ordinarily erroneous or prejudicial to include them all, by the use of the language of the statute, in instructing the jury as to what acts constitute the crime, provided the jury is clearly informed of the means upon which the prosecution relies for a conviction. (*People* v. *Ruiz*, 144 Cal. 251 [77 Pac. 907, 908] ; *People* v. *Patrick*, 277 Ill. 210 [115 N. E. 390].) In the Ruiz case, *supra*, the defendant was charged and convicted of grand larceny committed by stealing some calves. The jury was given the definition of grand larceny in the language of section 487 of the Penal Code, declaring that the crime was accomplished by stealing a "horse, mare, gelding, cow, steer, bull, calf, mule, jack, jenny, sheep or lamb". As in the present case, it was there contended this instruction was "confusing and misleading". In holding that the instruction was properly given, the court said:

"In the instruction the jury were told that they could convict the defendant only if they believed from the evidence . . . that he had done the specific thing charged."

In the Patrick case, *supra*, on appeal from a judgment of conviction of abortion, wherein an instruction was given similar to the ones which are challenged in the present case, the court upheld the validity of the following instruction, to wit: "Whoever by means of *any instrument*, medicine, drugs, or other means whatever caused any woman pregnant with child to abort," is guilty of a felony.

In the present case the jury was specifically instructed that "Before you can find the defendant guilty you must find that the defendant used an instrument or instruments in and about the body of Emily Caton, with the intent to bring about a miscarriage of Emily Caton, a pregnant woman, *as alleged in the indictment."*

The indictment was read to the jury. They must be presumed to have known the defendant was charged with intending to procure a miscarriage by means of an instrument and not by means of drugs.

The last of these challenged instructions charges the jury that the "gist of the offense of committing an abortion *is the intent of procuring a miscarriage"*. This is a correct statement of the law. (*People* v. *Richardson,* 161 Cal. 552 [120 Pac. 20] ; 1 Cal. Jur. 102, sec. 3.)

These four instructions were properly given to the jury. They were neither misleading nor erroneous.

The appellant charges prejudicial error in the refusal of the court to give her proffered instructions numbered 12, 15 and 20. These instructions each declare that the crime with which defendant is charged is confined to the intention of committing a miscarriage by means of an instrument, and not otherwise. These instructions are sufficiently covered by the one above quoted, which was given to the jury at the request of the prosecution. It did not constitute error to refuse to give these instructions.

The refusal to give defendant's instructions numbered 4, 11, 12, 15, 17, 19 and 20, which were offered as a part of the court's charge, is assigned as reversible error. Each of these instructions, in effect, charges the jury that the defendant may not be convicted unless they find beyond a reasonable doubt that she used an instrument upon the body of Emily Caton, *with the express intention of procuring a miscarriage.* Number 4 emphasizes the necessity of finding that the intention to procure a miscarriage existed, by saying that if the jurors were uncertain as to whether an instrument was used for that purpose or merely to discover whether the patient was suffering from a venereal disease, then they could not agree upon a verdict of conviction.

After carefully examining the entire charge which was given to the jury, we are satisfied these challenged in-

structions were sufficiently covered by others which were given to the jury. The jury was repeatedly instructed that the "gist of the offense of committing an abortion *is the intent of procuring a miscarriage"*. The jury was instructed as above quoted that they could not convict the defendant unless they found that she had used an instrument in and about the body of Emily Caton "with the intent to bring about a miscarriage". The challenged instruction number 4 above mentioned is open to the criticism that it is argumentative. The jury was adequately instructed that as a necessary element of the offense with which the defendant was charged, they must find that she was actually pregnant at the time of the alleged criminal operation. ■■■ While pregnancy is a material and necessary fact to be proved in a prosecution for this offense (1 Cal. Jur. 110, sec. 9), it is not necessary to prove that the accused person absolutely knew that the patient was pregnant. It is sufficient for the purpose of establishing the crime to prove that the accused person · believed that the patient was pregnant. It has been held to be sufficient if the accused was merely suspicious of that fact, provided it is satisfactorily shown that she used the instrument or drugs *with the intention of procuring a miscarriage.* (*People* v. *Richardson, supra.*) Defendant's instruction number 17 was erroneous and therefore properly refused because it included the following admonition:

"Before you can find the defendant guilty, you must first find that Emily Caton was pregnant; second, that Margaret Browning knew or had reason to believe that Emily Caton was pregnant."

It was not prejudicial error to refuse to give the seven instructions last mentioned. It appears that the jury was fairly and fully instructed with respect to all the necessary elements of the crime with which the defendant was charged.

■■■ It is contended the evidence is insufficient to support the verdict in this case chiefly because there is no direct proof that an instrument was actually inserted or used upon the patient in the course· of the treatment which was administered to the patient. We think the verdict and judgment are adequately supported by the evidence.

It appears that the defendant was a married woman living with her husband on a farm near Chowchilla. She

was neither a physician nor a licensed nurse. For many years before her marriage she had served in a hospital and elsewhere as a practical nurse. After the commission of the offense with which she was charged, she was found to be possessed of a set of obstetric instruments. She admitted that she was accustomed to treat women who came to her afflicted with female ailments. Emily Caton was employed as a domestic servant in a home at Merced. She was pregnant. She told Verbie Grigsby she was pregnant and "wanted to have something done" about it. November 10, 1932, she went to the home of the defendant in company with Verbie Grigsby. She told Mrs. Browning she was pregnant. She was instructed to remove her clothing and take her place upon a table. She did so. She testified regarding the operation which was performed by the defendant, "Some instruments were used on me." She also said that a pan containing some instruments in water was placed on the gas stove. She admitted that she did not actually see the instruments, but she testified that while she was lying on the table she heard the "sound of the instruments rattling together". She also said that an instrument was inserted in her "private parts". The operation caused her some pain. She paid the defendant $10. She left with instructions to return a few days later, but was apprehended by an officer to whom she told her story. She became quite sick. After a subsequent examination in a hospital by Dr. Dearborn, he performed an operation which he said was necessary to save her life. On November 16th, six days after the alleged criminal operation by the defendant, the doctor removed from the patient a dead fetus and the placenta. He said an infection had taken place inside the uterus. In reply to the question "Could you tell . . . whether or not that incomplete abortion was spontaneous or induced?" he replied "It was induced." The defendant admitted that she used a sponge forceps to insert medicated gauze in the patient's vagina to treat the inflamed, swollen and diseased organ, which condition she claims existed.

The intent with which the instrument was used by the defendant was a matter for the determination of the jury. The intention with which an act is performed may be manifested by the surrounding circumstances. The jury

was fully instructed in that regard. In *People* v. *Fewkes*, 214 Cal. 142 [4 Pac. (2d) 538, 540], it is said, "Intent is a question of fact which may be proved like any other fact, by acts, conduct and circumstances connected with the offense."

The foregoing facts constitute ample evidence to support the implied finding of the jury that the defendant did use an instrument upon the body of Emily Caton with the intention of procuring a miscarriage. The judgment is therefore sufficiently supported by the evidence.

Numerous errors are assigned by the appellant with respect to rulings of the court in admitting testimony during the course of the trial. After a careful examination of each of these charges we are of the opinion none of them constitute prejudicial error. ■■ The sustaining of an objection to the general question as to what diseases might cause a miscarriage was not prejudicial. It is conceded that this question was directed toward establishing proof that a miscarriage might be caused by gonorrhoea. Dr. Ransom testified that gonorrhoea might cause a miscarriage. The exclusion of evidence is harmless when the fact is proved by other witnesses. (2 Cal. Jur. 1022, sec. 608; *Silvey* v. *Harm*, 120 Cal. App. 561, 572 [8 Pac. (2d) 570].) ■■ The evidence of the entry which was contained in the defendant's memorandum book, as follows: "1932 10 Keaton 10" was properly admitted. The defendant denied receiving any money in payment for her services from Emily Caton, who testified that she had paid her $10. It was contended that this payment was made August 10, 1932. The name Keaton sounds much like that of Caton. It is reasonable to assume it was spelled by the defendant as it sounded to her, and that the entry in her memorandum book indicates she was crediting Emily Caton with $10 paid on —— 10, 1932. If so this entry tends to impeach defendant. The evidence was competent. It was a matter for the jury to determine whether the entry had reference to the payment of $10 received by the defendant on that date from Emily Caton. The evidence of another entry in that book with relation to another person was stricken out and the jury was instructed to disregard it. This cured the error of admitting it in the first instance. ■■ We do not think the cross-examination of Sheriff

Rhodes was unduly restricted. A court has considerable discretion in confining the examination of a witness to reasonable bounds. We think the defendant was not prejudiced by the rulings of the court in that regard.

Ethel Pitman was called as a witness in behalf of the prosecution. She said that she knew the defendant. When she was asked if she had visited her home in July, 1932, she refused to answer, saying that she had talked with her the night previous to the trial and that "She threatened me. . . . She said it would cause me trouble." At the request of counsel for the defendant, who then said: "I will ask the court to instruct this witness as to her rights under the provisions of the code," the judge told the witness she need have no fear, that she was under the protection of the court, but that she had a legal right to refuse to answer questions on the ground that the answers might tend to incriminate her. Thereupon the witness declined to answer further questions.

It is contended this incident was prejudicial to the defendant, and should have been conducted out of the presence of the jury. We think that any prejudice which may have followed was waived by the defendant's failure to ask the court to instruct the jury to disregard it. It does not appear there was any previous knowledge on the part of the court or counsel that the witness was going to decline to answer questions, or what reason she might assign for this refusal. Her prompt refusal to answer when she was instructed that she might do so under the provisions of section 2065 of the Code of Civil Procedure on the ground that her answers might tend to incriminate her, leads to the clear inference that she was in some way associated with the defendant in this or other criminal operations in violation of section 274 of the Penal Code. She was instructed regarding her right to refuse to answer questions at the request of defendant's attorney. Her conduct on the witness-stand was evidently a surprise to both the court and counsel. The court was not requested to admonish the jury to disregard her answers. The incident does not furnish grounds for a reversal under the circumstances of this case.

Finally it is contended that both the judge and the district attorney were guilty of prejudicial misconduct

which entitled the defendant to a reversal of the judgment. No specific misconduct of the district attorney is pointed out in the appellant's briefs. We are therefore required to assume little confidence is placed in this charge so far as he is concerned, and that there is no merit in the contention in regard to him.

The misconduct which is assigned to the court consists of alleged general prejudice against the defendant exhibited by the "demeanor and the conduct of the trial judge during the trial", in his rulings upon the introduction of evidence, in restricting the cross-examination of Dr. Ransom, Ethel Pitman and Sheriff Rhodes as above related, and in permitting evidence of the entry in the memorandum book of the payment of $10 to the defendant. ▇ It is also stated that this cause was tried twice; that the jury disagreed at the first trial, and that because of the judge's conduct on that trial, the defendant formally moved the court to disqualify the judge from further participation in the proceedings; that in support of the motion the affidavits of many spectators of the first trial were filed declaring that the trial judge had not given the defendant a fair and impartial trial; that a counter-affidavit was filed by the trial judge, and that another judge heard and determined the motion adversely to the defendant. The proceedings on that motion are not before the court on appeal. We must therefore assume the motion was correctly determined. The conduct of the judge upon another trial, the proceedings of which are not included in the record on this appeal, may not be considered upon this charge of misconduct. We have carefully read the entire record on appeal and observe no evidence of unfair treatment of the defendant or her counsel during the trial. We have heretofore disposed of the specific instances assigned as evidence of misconduct. ▇ We are unable to see any evidence of unfairness or misconduct on the part of the judge in restricting the cross-examination of witnesses, in rulings upon the introduction of evidence or in any remarks which were made by the judge in the course of the trial. The general charge of misconduct is too intangible and uncertain to furnish a basis for discussion. In 8 California Jurisprudence, page 613, section 596, it is said:

"The action of the trial court in being hasty, impatient, unreasonably arbitrary and in causing humiliation to counsel for the defense, does not, standing alone, justify a reversal, but merely accentuates the effect of other errors disclosed by the record."

We do not infer that the judge was guilty of any such lack of judicial demeanor. But the misconduct of a trial judge which will warrant a reversal of the judgment should be so definite and apparent as to leave little doubt that it has resulted in depriving the accused of a fair and impartial trial. The record in this case certainly discloses no such conduct. The charge of prejudicial misconduct on the part of the judge is without merit.

There appears to have been no miscarriage of justice in the present case.

The judgment and the order are affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 3, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 19, 1933.