[Crim. No. 3926. In Bank.—March 18, 1936.]

THE PEOPLE, Respondent, v. FRANCIS D. COLTRIN, Appellant.

Sharpless Walker and Otto A. Jacobs for Appellant.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

SEAWELL, J.—Further examination of the questions of law raised by petitioner, appellant herein, in his petition which caused this court to grant a hearing, has satisfied us that the reasoning and the conclusion reached by the District Court of Appeal, Fourth District, opinion by Barnard, P. J., are sound, and that the questions presented on appeal were correctly decided.

We herewith adopt the opinion and decision of that court as and for the decision of this court. The opinion follows:

"The defendant was charged with the crime of abortion and, in a second count, with the crime of murder. He was convicted of abortion on the first count and of murder in the second degree on the second count and sentenced on both, the sentences to run concurrently. This appeal is from the judgments and from orders denying motions for a new trial.

"It is contended that the evidence is not sufficient to sustain the verdict. The appellant is a physician 77 years of age, and the two charges arose out of his treatment of a girl 16 years old and her subsequent death. The defense was that the appellant merely made an examination of the girl to determine whether or not she was pregnant, that he found she

had previously aborted, and that all he did was to clean up and treat the condition he found.

"Another doctor testified that the girl came to him on January 19, 1935; that he made a complete examination of her, with a Friedman test, and found that she was a perfectly healthy girl who was six weeks pregnant; that he saw her again on January 20 and January 24; that she admitted to him that she had taken some medicine and drugs but that on these three occasions there was no evidence of any interference, either medical or surgical, which would cause a miscarriage; that he himself used no medicine and no instruments but merely determined her condition; and that, in his opinion, an abortion was not necessary to save her life. The mother of the girl testified that on January 30, 1935, she went with the girl to the office of the defendant; that she told him the girl was in trouble and wanted to have something done; that the defendant replied he thought he could do something; that she asked what he charged for an operation like that to which he replied $50; that after some talk he agreed to do it for $35 and told them to come back on February 4, 1935, at 8:30 a. m.; that they returned at that time and she told the appellant she only had $20; that the appellant accepted this amount with the girl's watch; that when they went there the girl was suffering no pain and was not flowing; that the appellant administered a hypodermic and took her daughter to another room; that about an hour later she went into this room and her daughter was on an operating table; that the girl was then removed to a bed to remain until she became conscious; that fifteen or twenty minutes later the appellant administered another hypodermic; that the girl was bleeding and a napkin was placed upon her; that she was taken home about one o'clock; that the girl was suffering pain in the abdomen from the time she was brought home; and that the next morning another doctor was called.

"The girl was taken to the hospital on February 9 and died on February 14, 1935.

"A doctor who performed an autopsy testified that he found a piece of placential tissue, a tissue which results from conception, in the uterus; that death came from peritonitis; that this girl had been 'operatively manipulated' causing this infection; and that, in his opinion, as a result of the examina-

tion, an instrument had been used and peritonitis was caused by 'instrumentation'. Another doctor, who treated the girl from February 9 until her death and who assisted in the autopsy, testified that the cervical canal was unduly enlarged, congested, red and gave the appearance of trauma, a bruising of the tissues in that area. He expressed an opinion that an instrument had been inserted, basing the same upon the fact that the living tissues of the cervix were traumatized. Both of these doctors expressed the opinion that an abortion was not necessary to save the girl's life.

''The defendant testified that on January 30, the girl and her mother came to his office; that the mother told him she had just discovered that the girl was in a delicate way and wanted to know if there was anything he could do or would do that could be safely done to help her out of it; that he told her to bring the girl in on February 4 and he would make an examination and see whether or not she was pregnant and if she was what might be the best thing to do about it; that he told her the charge would be $35; that this charge was for an examination to ascertain whether or not she was pregnant; that the mother told him she knew her daughter was pregnant but that this did not mean anything to him, as she might be mistaken; that on February 4 the mother gave him $20 and a watch that belonged to the girl; that he gave the girl a hypodermic injection and then an anaesthetic; and that he then made an examination to find out whether or not she was pregnant. He then testified that in making the examination some blood and a blood clot came out on his hand so he inserted a speculum to enable him to look at the cervix; that he found a tear or laceration in the uterus about an inch long and knew at once that 'there had been some meddling there'; that he decided to explore the uterus to see if she had aborted and if it was a complete abortion; that he did not find any part of the fetus and that he then 'gave it up' and merely irrigated the parts and did what he could to prevent a possible infection. While at the trial the appellant denied he had intended to perform an abortion in case he found the girl pregnant, his testimony before the grand jury was admitted in which he frankly stated that he intended to do so and that he told them to come on February 4 for that purpose.

"The appellant's nurse testified that she was present when the appellant examined the deceased; that the appellant 'inserted his two fingers and his hand was full of blood'; that the appellant then put the girl under an anaesthetic and inserted a speculum and opened it up and called her attention to a laceration which she says she observed; that the appellant then took a little instrument and took out some blood clots and did nothing more except to wash the patient and put some medicine in her. The two doctors who performed the autopsy testified that at that time they found no such laceration as that described by the appellant and produced the uterus which had been taken from the girl, which showed no such laceration. There was evidence that such a laceration as that described by the appellant if it had existed on February 4 would have been visible on February 14, and that the uterus when introduced in evidence was in the same condition as when taken from the body except that it had been cut open to permit inspection and except for the action of the preservative in which it was kept, and that neither of these would have affected the laceration in question. The defendant himself admitted before the grand jury that the laceration he observed on February 4, 1935, would not have healed before the death of the patient on February 14 and would still have been noticeable at that time.

"While the appellant insists that there is no evidence to show that the girl was pregnant on the morning of February 4, or that he did anything other than make an examination and treat the condition he found, this contention rests upon a conflict in the evidence at best, and the brief summary of the evidence above set forth, with the reasonable inferences therefrom, is sufficient to support the verdict. (*People* v. *Knowles,* 7 Cal. App. (2d) 398 [46 Pac. (2d) 788] ; *People* v. *De Vaughn,* 2 Cal. App. (2d) 447 [38 Pac. (2d) 192].)

"It is next urged that the court committed prejudicial error in admitting the testimony of two witnesses who testified to the effect that the appellant had performed abortions upon them, respectively, on September 7, 1934, and on December 20, 1934. It is further urged that the district attorney should have stated the purpose for which this evidence was offered, that the trial court should have admonished the jury at the time that it was admitted for a special purpose,

that the argument relating thereto should have been limited to this special purpose, and that the court at the close of the case should again have instructed the jury that it was admitted only for a special purpose. It is further argued that this evidence was not admissible on the question of intent because the appellant freely admitted that he had intended to perform such an operation had he found it necessary and that, in any event, it would only become admissible as rebuttal after evidence for the appellant was introduced.

"While the appellant admitted before the grand jury that he intended to commit an abortion on this occasion he refused to admit this at the trial and stated that he had only performed certain acts for another purpose. His intention in performing these acts was directly in issue. It was encumbent upon the prosecution not only to prove that certain acts had been done which resulted in an abortion but also that these acts were performed not for a lawful purpose but with the intention of causing an abortion. (*People* v. *Josselyn,* 39 Cal. 393; *People* v. *Richardson,* 161 Cal. 552 [120 Pac. 20]; *People* v. *Lee,* 81 Cal. App. 49 [252 Pac. 763]; *People* v. *Browning,* 132 Cal. App. 136 [22 Pac. (2d) 784].) It is well settled that where an offense is of such a nature that proof of the act with which the defendant is charged is not in itself proof of the required criminal intent and where additional proof of such intent is necessary to prove the crime charged, evidence of other offenses of a similar nature committed by the defendant is admissible for the purpose of proving intent. (*People* v. *Morani,* 196 Cal. 154 [236 Pac. 135]; *People* v. *Northcott,* 45 Cal. App. 706 [189 Pac. 704]; *People* v. *Hickok,* 56 Cal. App. 13 [204 Pac. 555]; *People* v. *Judson,* 128 Cal. App. 768 [18 Pac. (2d) 379].) Since it was incumbent upon the prosecution to prove the intent with which the act was done, and especially since the order of proof is largely in the discretion of the trial court, it was not prejudicial error to receive this evidence during the main case for the prosecution. (*People* v. *Northcott, supra; People* v. *Sindici,* 54 Cal. App. 193 [201 Pac. 975].) The appellant did not ask the court to admonish the jury at the time this evidence was received that it was received for a special purpose but, at the close of the case, the court instructed the jury to that effect.

"The appellant complains of the following instruction given by the court:

" 'Testimony has been introduced by the prosecution in this action tending to prove other alleged acts of abortion by the defendant. This testimony was admissible only when the defendant claimed he had not performed the operation following an agreement to do so with the mother of Charlotte Valentine, for the reason that the said Charlotte Valentine had a miscarriage before she came to his office on February 4th, 1935. To rebut this contention of defendant, such testimony was admitted. This testimony was not introduced to prove distinct offenses, but was introduced to corroborate the evidence tending to support the one specified alleged offense for which the defendant is now on trial herein, as a felonious intent is an essential ingredient of the crime of abortion as charged, and said testimony was introduced for the purpose to show intent and motive on the part of said defendant.'

"And appellant complains of the refusal of the court to give this instruction:

" 'You are instructed that in this case the defendant cannot be convicted of any other offense than the offenses upon the person of Charlotte Valentine, as charged in the indictment herein, or offenses against said person included in said charges.'

"While the first of these instructions is far from a model, we think it sufficiently informed the jury that the evidence of two other offenses of a similar nature, which was received, was to be considered only on the question of the intent of the appellant and that he was not to be convicted on account of other offenses but that the offense with which he is here charged was alone to be considered by them. This is especially true when the instruction complained of is considered with several instructions which both preceded and followed it, in which the court definitely limited the matter to the offense charged in the indictment. In our opinion, any technical error in connection with this instruction may not be held sufficient to justify a reversal in view of article VI, section 4½ of the Constitution.

"Error is assigned in the admission of the testimony of another witness, a deputy sheriff, who testified that on

February 11, 1935, he went to the appellant's office and asked him to accompany him to the district attorney's office, that the appellant inquired as to why he was wanted, and that when told it was in regard to an abortion he replied, "Which one?" This statement by the appellant was in the nature of an admission and tended to indicate a consciousness of guilt. We see no reversible error in its admission.

■ "It is next urged that the court erred in admitting in evidence the uterus of the deceased, it being urged that its only purpose was to prejudice the jury. It had another purpose since the appellant and his nurse testified that they observed a laceration thereon which did not there appear at the time of the autopsy or at the time of the trial. The defendant's rights were amply protected in connection with any changes that had occurred in the condition of the exhibit.

■ "It is strenuously urged that the court erred in refusing, prior to the trial, to require the district attorney to furnish to the appellant a statement made by the girl in question shortly before she died, and again in refusing a request of the appellant during the trial to have this statement admitted in evidence. The statement was taken on February 11, 1935, at the hospital and was taken down in shorthand. The appellant contends that it was in the nature of a dying declaration and also that it was admissible as showing the condition of the girl at the time she came to him on February 4. The statement was not admissible as a dying declaration since the girl at that time stated she thought she was going to get well. The appellant's contention that this statement was admissible as showing the condition of the girl at the time she came to him on February 4 is based upon a portion thereof in which the girl admitted that she had taken some capsules and some medicine. It appears from the statement that these were taken by her more than a week before February 4 and nothing in the statement would even indicate that she was not pregnant on the last-named date. It further appears that appellant's contention in this matter is purely a technical one since the statement in its entirety, if admitted in evidence, instead of being helpful to him would necessarily have had a quite contrary effect.

■ "It is contended that the court was guilty of prejudicial error in commenting on the evidence after the case had

been submitted to the jury. The jury returned to the courtroom and asked that certain instructions be reread, which was done. Thereafter one of the jurors asked 'Could you tell us the relationship between the first count and the second?' The court reread both counts of the indictment and certain instructions with reference to each count and then said: 'It might be possible that some of the jurors are confused by the fact that there are two counts, one charging murder and one abortion. I will say that under our code not only murder is a felony, of course, but abortion is a separate and distinct offense; it also is a felony, and under the indictment in this case if the jury believes the evidence introduced by the People to a moral certainty and beyond a reasonable doubt, that evidence will support the indictments on both counts.' This statement was in answer to the juror's question and amounts to a statement that the evidence on behalf of the prosecution, if believed by the jury to a moral certainty and beyond a reasonable doubt, was legally sufficient to support the conviction on both counts. No attempt was made to comment on the weight of the evidence or express any view that might be held by the court. Whether or not the statement was proper, under the recent amendment to the Constitution (art. VI, sec. 19), we are unable to regard it as reversible error under the circumstances of this case.

"After reading the entire record we cannot see how the jury could have come to any other conclusion with respect to the guilt of the appellant and, with that in mind, we are unable to say that any error or irregularity appearing is sufficient to have resulted in a miscarriage of justice.

"The final contention is that in pronouncing sentence upon both counts the court violated section 13 of article I of the Constitution and section 654 of the Penal Code relative to placing a person twice in jeopardy and imposing two punishments for one act. In this connection it is also argued that since judgment was first pronounced on the abortion charge the court was without power to pronounce any judgment on the murder charge. Irrespective of the merits of the first of these contentions we think the order in which the verdicts were read, and in which the judgments were pronounced, is not material (*People* v. *Degnen,* 70 Cal. App. 567 [234 Pac. 129]) and that, in any event, the sentence on

the more serious charge may be sustained under the authorities which will be hereafter cited.

 "In most cases where an abortion has been committed and where the victim has died, the prosecution and conviction have been upon the greater charge alone. It seems clear under the authorities that where a defendant was convicted on an abortion charge and where the victim thereafter died, the first conviction would not be a bar to a subsequent prosecution for murder. (*People* v. *Wilson*, 193 Cal. 512 [226 Pac. 5]; *People* v. *McKee*, 80 Cal. App. 200 [251 Pac. 675].) While a prosecution on both of these charges in one action after the death of the person involved is unusual, we think the same principles are applicable and that a prosecution for the one is not a bar to a prosecution for the other.

 "The constitutional provision referred to relates to a second jeopardy for the same offense. Section 654 of the Penal Code does not apply to statutes which do not make an act or omission punishable in different ways but which name different acts and different offenses, and punish each act separately. (*People* v. *Mehra*, 73 Cal. App. 162 [238 Pac. 802].) If the act involved in one charge is necessarily involved in the other and is merely incidental to that charge but one offense is committed and it cannot be carved into two offenses in order to inflict a double punishment. (*People* v. *Mazzola*, 99 Cal. App. 682 [279 Pac. 211].) But where the two offenses are entirely separate and distinct and the one is not necessarily included in the other, a prosecution for the one is no bar to a prosecution for the other even though the same testimony may be applicable to both. (*In re O'Connor*, 80 Cal. App. 647 [252 Pac. 730].) In that case, the court said: 'While a single act may be an offense against two statutes, and thus constitute two crimes, if each statute requires proof of a fact additional to those involved in the other an acquittal or conviction of either does not result in the defendant having been in jeopardy for the other.' In *People* v. *Kerrick*, 144 Cal. 46 [77 Pac. 711], the court said: 'To be "necessarily included" in the offense charged, the lesser offense must not only be part of the greater in fact, but it must be embraced within the legal definition of the greater as a part thereof. "To entitle a defendant to the plea

of *autrefois convict* or *acquit,* it is necessary that the offense charged be the same in law and fact.'' (*People* v. *Helbing,* 61 Cal. 620.)' In *People* v. *Day,* 199 Cal. 78 [248 Pac. 250], the court said: 'It may be conceded that if the two counts stated precisely the same offense that an acquittal upon one count would operate as an acquittal upon the other count. . . . It is not the great similarity in most of the facts constituting separate offenses but the presence of a fact necessary in one offense and absent in another that determines whether offenses are separate.' Among other cases throwing some light on the matter before us may be cited the following: *People* v. *Brain,* 75 Cal. App. 109 [241 Pac. 913] ; *People* v. *Johnson,* 82 Cal. App. 411 [256 Pac. 273] ; *People* v. *McFarlan,* 126 Cal. App. 777 [14 Pac. (2d) 1066].

■ ''The act of committing an abortion and the act of killing a person while attempting to do this are not merely the same act made punishable in different ways. Not only are these two offenses separate and distinct in a legal sense and each dependent upon evidence not required in the other, but as a practical matter it cannot be said that the two charges involve but one act. The act of committing an abortion may be done without causing the death of the party operated upon. The act which causes the death of the same person is usually another act, careless or otherwise, which, while it may be committed in connection with the first and about the same time, involves a further and additional element. The precise question here raised seems not to have been decided in this state, but an application of the above-mentioned rules to the facts of this case leads us to the conclusion that in pronouncing sentence on both of these counts the court did not violate either the constitutional provision or the statute relied upon.''

The above opinion quite fully considers each question raised by appellant. However, because of the insistence of appellant, first, that prejudicial error was committed by the trial court in admitting evidence of other abortions alleged to have been committed by appellant and, second, that a judgment of conviction for the crime of abortion and for murder, in cases where the latter offense is the direct result of the former, violates the double jeopardy clause of the state Constitution (art. I, sec. 13), which provides that ''no person shall be twice

put in jeopardy for the same offense'', we have deemed it proper to add a few observations to those made by the District Court of Appeal on those specific subjects.

Appellant undertakes to distinguish the applicability of the rule as to the admissibility of evidence tending to prove other offenses of abortion committed by the defendant in cases where the accused is an experienced physician and surgeon from cases in which the accused is not a physician or surgeon. He asserts that in the case of an experienced physician or surgeon, as appellant was shown to be, his ''professional acts characterize his intent'', and, therefore, proof of other acts of a criminal character are inadmissible against him, while acts committed by a person not a physician or surgeon would be admissible to show that the operation by the layman was not innocently or ignorantly done, but was performed with the specific intent to commit an abortion. We are unable to follow this reasoning. A physician charged with the crime of abortion may claim that the fetus was removed in order to save life and thereby refute the charge that it was done with a criminal intent. On this controverted question, evidence that he has committed other abortions is admissible as throwing some light upon the question of intent, that is to say, whether the fetus was removed with a criminal intent or whether it was a lawful operation. No logical distinction may be drawn as to the rule being applicable to a layman and not to a physician. Neither are we able to see any merit in the contention of defendant that, because he boldly admitted in his testimony before the grand jury that the young girl came to his office upon appointment, with the understanding that he was to commit an abortion, and that he would have committed it had he not found that the condition of pregnancy which he had diagnosed a few days prior thereto had disappeared and there was then no fetus to remove, and that because, forsooth, having admitted his intention as to what he would have done' if pregnancy had still continued, it thereby became unnecessary to call witnesses as to other abortions and that the only object in so doing was to prejudice him in the eyes of the jury. While appellant denied that he committed any act that would produce an abortion, with instruments or otherwise, the evidence was sufficient to show a removal of the fetus by him and, therefore, acts tending to

prove the commission of other abortions were germane to the intent with which he had committed an act which he denied. The admission that he came prepared to commit an abortion, but found the pregnancy removed, was the same kind of prejudice that proof of the commission of other abortions would have engendered. If the immateriality of the evidence as to other abortions be conceded, appellant, by reason of his avowed intent, suffered no prejudice that would justify a reversal.

We have given attention to the double jeopardy argument and are brought to the same conclusion as above announced in the adopted opinion of the District Court of Appeal. Murder and abortion are not the same offenses. Therefore, the Constitution is not violated.

We now turn to the statute. Section 1023 of the Penal Code provides:

"When the defendant is convicted or acquitted, or has been once placed in jeopardy upon an indictment or information, the conviction, acquittal, or jeopardy is a bar to another indictment or information for the offense charged in the former, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that indictment or information."

Certainly murder does not include abortion. Neither is the converse true. Death is by no means a necessary ingredient of abortion. There are classes of crime which have the same basic elements and a conviction or acquittal of one is a bar to a prosecution of the other. Assaults are of this class and a conviction of an assault with a deadly weapon with intent to commit murder, made upon the same person and consisting of one act, bars a prosecution for an assault with a deadly weapon or assault. Other illustrations could be drawn.

Abortion is a distinct crime from murder. There is no limitation of time within which a prosecution for murder must be commenced. Prosecution may be commenced at any time after the death of the person killed. (Sec. 799, Pen. Code.) In a case of abortion, an indictment must be found or an information filed within three years after its commission. (Sec. 800, Pen. Code.) "To make the killing either murder or manslaughter, it is required that the party die within a year and a day after . . . the cause of death administered." (Sec. 194, Pen. Code.)

In case of judgment pronounced on conviction of abortion, prosecution for murder would not abate, provided the party upon whom the abortion was committed died within one year and a day after its commission. Nor would the judgment of conviction obtained many months prior thereto be nullified by reason of the conviction of the murder charge resulting from said criminal operation.

Section 654 of the Penal Code, which provides that an act which is made punishable in different ways by different provisions of the Penal Code, cannot be punished under more than one of such provisions, has no relevancy whatever to the proposition before us. It is not sought in this proceeding to punish abortion in any different way than the sole manner provided by section 274 of the Penal Code, in which the crime is defined as the employment of certain means or methods or the use of instruments, with intent thereby to procure the miscarriage of a woman, unless the same is necessary to preserve her life, the punishment being not less than two or *more* than *five* years. Murder and abortion are two distinct crimes and are not the same offenses, and there is no common basis upon which they may rest as the same offense.

The state constitutional provision is sufficient of itself to sustain an affirmance of the proposition that no double jeopardy exists by reason of the two judgments pronounced against appellant.

All other questions raised on appeal have been fully considered.

The judgments and orders appealed from are affirmed.

Langdon, J., Curtis, J., Shenk, J., Thompson, J., and Waste, C. J., concurred.

Rehearing denied.