LIU, J., Concurring.
I agree with the court that Penal Code section 654 (section 654) permits only one punishment in this case. I also agree with our decision to overrule In re Hayes (1969) 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430] and to disapprove People v. Harrison (1969) 1 Cal.App.3d 115 [81 Cal.Rptr. 396]. Unlike the court, however, I would not rest the judgment in this case on the ground that Jarvonne Feredell Jones’s three crimes involved “a single physical act.” (Maj. opn., ante, at p. 358.) In applying section 654, reasonable minds can and often do differ on how to define the “act” that constitutes a crime; as explained below, the present facts provide a case in point. Today’s opinion provides little guidance for making that determination, as revealed by the court’s repeated assertion that “[w]e express no opinion on what the outcome might be under other facts.” (Maj. opn., ante, at p. 359.) The lack of guidance all but invites future litigation, and California courts will continue to struggle to achieve consistent and predictable application of section 654.
I prefer that we decide today’s case on the basis of precedent—imperfect precedent, but precedent nonetheless. In situations where it is debatable whether separate crimes arise from a single physical act, we have determined the applicability of section 654 by examining the “intent and objective of the actor” and prohibiting multiple punishment “[i]f all of the offenses were incident to one objective.” {Neal v. State of California (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839] {Neal).) The Neal test has been criticized. But *370 this court unanimously reaffirmed the test—warts and all—in People v. Latimer (1993) 5 Cal.4th 1203, 1205-1206 [23 Cal.Rptr.2d 144, 858 P.2d 611] (Latimer) after lengthy and thoughtful consideration of whether it should be overruled. Despite its shortcomings, the Neal test is our precedent, and it is squarely applicable to this case.
I.
Some section 654 cases indisputably involve a physically indivisible single act that is punishable in different ways by different provisions of law. In such cases, multiple punishment is prohibited by the plain language of section 654: “An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.”
Thus, for a single act of driving, a defendant may be punished only once for driving under the influence (Veh. Code, § 23152, subd. (a)) and driving with a blood-alcohol level of .08 percent or greater (id., subd. (b)). (People v. Duarte (1984) 161 Cal.App.3d 438, 447 [207 Cal.Rptr. 615].) A defendant may be punished only once for attempted murder, assault with intent to murder, and malicious use of explosives for the single act of planting a bomb in the victim’s car. (People v. Kynette (1940) 15 Cal.2d 731, 762 [104 P.2d 794], overruled on another ground in People v. Snyder (1958) 50 Cal.2d 190, 197 [324 P.2d 1].) A defendant may be punished only once for possession of a sawed-off shotgun and possession of a concealable firearm by a felon based upon the same act of possessing a single firearm. (People v. Scheidt (1991) 231 Cal.App.3d 162, 170 [282 Cal.Rptr. 228] [“ ‘it was the single possession of a sawed-off rifle that was made punishable by two different penal statutes’ ”]; People v. Perry (1974) 42 Cal.App.3d 451, 456 [116 Cal.Rptr. 853] [“Here the single act made punishable by two different statutes was the illegal possession of a firearm capable of concealment upon the person.”].) In all of these cases, there was no question as to the physical indivisibility of the act.
As the court acknowledges, however, “what is a single physical act might not always be easy to ascertain.” (Maj. opn., ante, at p. 358.) This is such a case. Police found a concealed and loaded firearm in the car that defendant, a convicted felon, was driving. He was convicted under three separate statutes for possession of a firearm by a felon, carrying a concealed firearm, and carrying a loaded firearm, respectively. The court concludes that this case involves a single act and on that basis holds that “a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654.” (Maj. opn., ante, at p. 357.) Although this is a reasonable conclusion, it is not apparent how the court defines this single act. It would *371 be equally reasonable to conclude that there were two criminal acts in this case: the act of possessing the firearm, which was complete and ongoing from the time defendant took possession of the firearm, and a separate criminal act when defendant placed the firearm in his car and transported it. It might even be reasonable to conclude that there were three criminal acts if one were to separately count the act of loading the firearm with ammunition. To ask how many physical acts were committed in a case like this is to plunge ourselves into insoluble metaphysical difficulties.
It is instructive to compare the reasoning in People v. Coltrin (1936) 5 Cal.2d 649 [55 P.2d 1161] with the reasoning of People v. Brown (1958) 49 Cal.2d 577 [320 P.2d 5] {Brown), which overruled Coltrin. This court held that the defendant in Coltrin could be punished both for performing an unlawful abortion and for murder when the defendant performed an abortion on a 16-year-old girl that resulted in her death. The court reasoned that “ ‘[t]he act of committing an abortion and the act of killing a person while attempting to do this are not merely the same act made punishable in different ways. . . . [A]s a practical matter it cannot be said that the two charges involve but one act. The act of committing an abortion may be done without causing the death of the party operated upon. The act which causes the death of the same person is usually another act, careless or otherwise, which, while it may be committed in connection with the first and about the same time, involves a further and additional element.’ ” {Coltrin, 5 Cal.2d at p. 661.)
Over two decades later, we reached the opposite conclusion in Brown, supra, 49 Cal.2d 577, on similar facts. Overruling Coltrin, we reasoned that when the defendant performed an abortion that resulted in the death of the victim, “[i]t is artificial to say that the act which caused death in the Coltrin case, and the act which caused death in the present case, was another act than that which constituted the abortion.” {Brown, at p. 593.) The Coltrin court reasonably concluded that the act of committing an abortion and the act of murdering the victim in the process are separate acts. The Brown court reached the equally reasonable conclusion that the defendant committed only a single act. These cases illustrate that asking whether separate crimes involve “a single physical act” (maj. opn., ante, at p. 358) is not a very illuminating inquiry where it is reasonably arguable that the crimes involved more than one act.
Another complication of the court’s approach is that it seems to suggest different results depending on how a prosecutor chooses to draft the accusatory pleading. In this case, the Attorney General argues that separate acts occurred because defendant told the police he had obtained the gun three days before it was discovered in the car and had kept it at his grandmother’s house. The court rejects this argument on the ground that the accusatory *372 pleading did not charge defendant with possessing the gun before the date he was arrested. But if the accusatory pleading had charged defendant with possessing the gun before the date of the two unlawful carrying charges, would that have changed the outcome? Does the distinction make a difference? The court does not say, leaving prosecutors to wonder whether the lesson here is simply that they should draft the accusatory pleading differently in cases such as this.
To be sure, section 654 is a sufficiently beguiling statute that it makes sense to proceed cautiously and avoid broad pronouncements. In People v. Ahmed (2011) 53 Cal.4th 156 [133 Cal.Rptr.3d 856, 264 P.3d 822], I saw no need for the court to invent a new rule that “ ‘when applied to multiple enhancements for a single crime, section 654 bars multiple punishment for the same aspect of a criminal act’ . . .” because the case involved no “actual dispute on that question.” (Id. at p. 169 (cone. opn. of Liu, J.).) Here, there is an actual dispute concerning the applicability of section 654, and there is a decent argument that defendant’s possession of the gun was a separate act from his carrying offenses. Because it cannot be said that defendant’s crimes indisputably involved a single act, we cannot resolve this case on the plain language of section 654. (Cf. ante, at pp. 370-371 [discussing indisputably single-act cases].) At the same time, we do not need to invent a new rule to decide this case. We need only apply our settled precedent.
II.
Where reasonable minds can differ on whether multiple crimes involve a single act, we have applied the “intent and objective” test set forth in Neal, supra, 55 Cal.2d at page 19: “Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.”
We have applied the Neal test to bar multiple punishment in cases involving multiple acts united by a single common objective. (See, e.g., People v. Britt (2004) 32 Cal.4th 944, 953 [12 Cal.Rptr.3d 66, 87 P.3d 812] (Britt) [sex offender’s failure to inform former county of new address and separate failure to register in new county “achieved] the common end of avoiding police surveillance”]; Latimer, supra, 5 Cal.4th at p. 1216 [“Although the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes.”]; People v. Beamon (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905] [kidnapping and robbery united by a “single intent and *373 objective” to rob the victim]; People v. McFarland (1962) 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449] [burglary and grand theft “were motivated by one objective, theft”].)
Because a well-developed body of precedent has applied Neal to cases that unquestionably involve multiple acts, it follows that the Neal test is the approach best supported by our case law for resolving cases that arguably involve multiple acts. The Neal test readily resolves the instant case: Defendant possessed and carried a loaded and concealed weapon “ ‘for protection’ ” (maj. opn., ante, at p. 352), and no evidence suggests any other purpose. Because his three crimes shared a common intent and objective, section 654 prohibits multiple punishment. Under the Neal test, the outcome would be the same on these facts whether or not the prosecutor charged defendant with antecedent possession of the gun, and whether or not the prosecutor chose to argue defendant’s antecedent possession to the jury.
The Neal test has not been without controversy, and in 1993, the court in Latimer expressly considered whether to overrule it. The court opined that Neal does not always ensure commensurability between punishment and culpability: “A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective.” (Latimer, supra, 5 Cal.4th at p. 1211.) The defendant in Latimer kidnapped the victim, drove her to the desert, and raped her. The court said “[t]he kidnapping was a completely separate crime; it should be separately punishable.” {Ibid.) But despite this concern, the court undertook an extended discussion of stare decisis and declined to overrule Neal. Instead, the court unanimously reaffirmed Neal on the ground that “[t]he Legislature has enacted substantial legislation reflecting its acceptance of the Neal rule.” {Id. at p. 1214; see id. at p. 1216 [“The Neal rule . . . has influenced so much subsequent legislation that stare decisis mandates adherence to it.”]; see also id. at p. 1217 (conc. opn. of Mosk, J.) [“I do not join in the criticism of Neal. . . .”].) Given the court’s unanimity in reaffirming the Neal test as well as our application of Neal to prohibit multiple punishment in Latimer {id. at p. 1216) and again as recently as 2004 (see Britt, supra, 32 Cal.4th at p. 953), the “intent and objective” test is well settled in our jurisprudence.
The Neal test requires courts to apply the appropriate level of specificity or generality in identifying the defendant’s intent and objective. In Britt, where a convicted sex offender moved from one county to another without informing either county and thereby committed two crimes, we said that “finding separate objectives here—to mislead or conceal information the law enforcement agency in each county—parses the objectives too finely. . . . Here the objective—avoiding police surveillance—was achieved just once, but only by *374 the combination of both reporting violations.” (Britt, supra, 32 Cal.4th at p. 953.) The court in Britt distinguished People v. Perez (1979) 23 Cal.3d 545, 550-554 [153 Cal.Rptr. 40, 591 P.2d 63], which held that section 654 did not bar multiple punishment for multiple sexual offenses that occurred during an attack lasting 45 minutes to an hour. Rejecting the defendant’s contention that “his sole intent and objective was to obtain sexual gratification . . . ,” we said that “[s]uch an intent and objective is much too broad and amorphous to determine the applicability of section 654. Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts.” (Perez, supra, 23 Cal.3d at p. 552.)
As these cases show, the application of Neal’s “intent and objective” test is not algorithmic. But this court has acknowledged that “[b]ecause of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an ‘act or omission,’ there can be no universal construction which directs the proper application of section 654 in every instance.” (People v. Beamon, supra, 8 Cal.3d at p. 636.) The court suggests it will be difficult to apply Neal where a defendant may have multiple objectives or where the evidence does not show what the defendant’s objective was. (Maj. opn., ante, at pp. 359-360.) Notwithstanding such difficulties, we have not hesitated to “focus on the question whether defendant should be deemed to have entertained single or multiple criminal objectives” in a wide range of scenarios. (People v. Perez, supra, 23 Cal.3d at p. 552; see Latimer, supra, 5 Cal.4th at p. 1216 [finding single objectives for kidnapping and rape even though “[i]t could be argued that defendant had two intents . . .”]; People v. Harrison (1989) 48 Cal.3d 321, 326, 334-338 [256 Cal.Rptr. 401, 768 P.2d 1078] [rejecting defendant’s claim of single objective for multiple sexual offenses during an attack on a single victim lasting seven to 10 minutes].) The Neal test is not perfect, but we recognized its imperfections in Latimer and reaffirmed it anyway. (Latimer, supra, 5 Cal.4th at pp. 1210-1211.)
In this case, the Neal test avoids the conceptual difficulty of determining whether one or more physical acts were involved and provides more guidance to courts and prosecutors than the court’s approach. Under Neal, it does not matter whether Jones picked up the gun three days earlier or. possessed the firearm earlier that day. It does not matter whether he loaded or concealed the gun before his car was stopped. And it does not matter—in future cases with identical facts—whether the prosecutor charges the defendant with antecedent *375 possession or argues that point to the jury. What matters is that Jones’s triply unlawful conduct was united by a single common objective. Accordingly, our precedent dictates that Jones may not be punished more than once under section 654.
Werdegar, J., concurred.