[Crim. No. 1550.   Third Appellate District.—April 1, 1937.]

THE PEOPLE, Respondent, v. JOHN HOPPER et al., Appellants.

Chester Monette for Appellants.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Defendants are jointly accused of the crime of grand theft in the stealing and carrying away of one heifer. From the judgment of conviction and from the order denying a motion for a new trial this appeal is taken.

As grounds for appeal it is claimed the court erred in the setting of the cause for trial, in the instructions to the jury, insufficiency of the evidence to support the verdict, and misconduct of the district attorney.

Appellants seem to place most emphasis for reversal upon their contention that the court erred in the setting of the case on November 24th for trial on November 30th, claiming they were not given sufficient time to subpoena witnesses and to prepare for trial. On November 20th the trial was set for January 11th; on November 24th, the defendants were again brought into court and were then represented by their counsel. At that time the court asked if they had any legal reason to show why the trial should not be had on November 30th instead of January 11th. Counsel objected, stating that November 30th followed so shortly after Thanksgiving Day, that he doubted if their witnesses would be available. The

court inquired as to the residence of the witnesses for the defendants and was informed by the attorney for the defendants that they resided in Fortuna in the county of Mendocino. The court then directed that subpoenas be issued and placed in the hands of the sheriff for service. Objection was also made that the advancement of the date of trial would work a hardship on defendants in that it would not give them sufficient time to prepare their defense. This objection was overruled and the case was set for trial for November 30th. When the matter was called for trial on that day no further objections of any kind were made by defendants, nor was a request for a continuance asked, but without objection the defendants proceeded to trial.

Section 1049 of the Penal Code provides, ''after his plea, the defendant is entitled to at least five days to prepare for trial''. There is no doubt that defendants had five days within which to prepare for their trial. Whether or not, however, this provision is modified by section 12a of the Code of Civil Procedure added in 1933, which provides that when any act is required by law to be performed within a specified period of time, such period of time is extended ''by such number of days as equals the number of holidays (other than special holidays) appointed by the President or by the Governor, and which occurred within or during such period'', need not be here determined, for in view of the failure to object or to request a continuance, at the time of trial this point has been tacitly waived.

In *People* v. *Browning*, 132 Cal. App. 136 [22 Pac. (2d) 784], a reversal of the judgment was sought on the ground that a portion of the trial was conducted on a holiday. The trial began February 27, 1933, and proceeded until its close on March 2, 1933. In the meantime the Governor had proclaimed March 2d, 3d and 4th, as public holidays. The fact did not become known to court or counsel until after the case had been submitted to the jury. Upon return of the jury, counsel objected to recording the verdict. The objection was overruled. Upon appeal, this court held, ''There is no doubt that a judgment of conviction which is pronounced on a holiday over the express objection of an accused person is void. (*In re Smith*, 152 Cal. 566 [93 Pac. 191]; *In re Dal Porte*, 198 Cal. 216 [244 Pac. 355].) But the irregularity of proceeding with judicial transactions on a holiday may be ex-

pressly waived or tacitly waived by failure to object thereto.'' (Citing many cases.)

As to the alleged errors in the instructions, it is claimed the court erred in giving to the jury an instruction upon the responsibility of a defendant as an aider and abetter. It is not contended by appellants that the instructions are incorrect statements of the law in itself, but they contend there is no evidence that either defendant aided or abetted the other in the commission of the offense, and hence it was error to give an instruction upon that subject. However, a judgment will not be reversed because an instruction is given containing a mere abstract principle of law not applicable to the case, where it appears that no prejudice to the defendant has resulted. (*People* v. *Wolcott,* 137 Cal. App. 355 [30 Pac. (2d) 601] ; *People* v. *Robinson,* 107 Cal. App. 211 [290 Pac. 470] ; *People* v. *Tapia,* 131 Cal. 647 [63 Pac. 1001].) We cannot presume error, and the burden is upon the appellant to show prejudice, if any. It also appears the jury were fully instructed on the presumption of innocence, reasonable doubt and the burden of proof.

Appellants assign as misconduct a remark by the assistant district attorney to the effect that the last five or six clients of the attorney for defendants who had refused to talk had landed in San Quentin. It is here charged that this was an attempt to influence the jury against counsel by endeavoring to show to the jury that he represented guilty clients. This remark was uncalled for and should not have been made, but we do not see wherein the rights of defendants were jeopardized or that such remark resulted in a miscarriage of justice in this case.

It is also urged that the evidence is insufficient to support the verdict of conviction against either or both of these defendants. We have read the entire record in which it appears that the calf which the defendants were charged with having stolen was taken from the field of the complaining witness some time between dusk on the evening of October 22, 1936, and 8 o'clock the following morning. Defendant Hopper was the owner of a Durant roadster, and on the evening of October 22d, Mr. and Mrs. Hopper called at the home of appellant Bacchetti and wife, and all had dinner together at the Bacchetti home. At about 11 o'clock that night Mr. and Mrs. Bacchetti took the Hopper car and drove from their

home, passed the residence of the complaining witness and the field in which he pastured his stock.

Mrs. Bacchetti testified that the purpose of the trip was to obtain a couple of rabbits at the Hopper home which she wished to prepare for a lunch which was to be taken by the four on a proposed trip the following day. Mr. and Mrs. Bacchetti both testified that they did not stop the car along the road, but a Mrs. Hyson testified that she heard a car stop on the road at about midnight on the night in question and heard a "thump" as though some object was being thrown into the car, and recognized the car as being the car of Hopper. A Mrs. Haight testified she was next door to the Hopper's home on the night in question, and at 1:30 o'clock in the morning of the 23d she heard an old car drive up to the Hopper premises, and there heard a "hacking" noise and men's voices.

An examination of the Hopper car the next morning showed fresh blood and cow hair upon the running board and in the back of the car. Buried beneath the corner of the Hopper house and on the premises were fresh lungs and meat, which was identified as coming from a calf. When officers came to investigate the conditions at the Hopper home the day following the loss of the calf they found fresh blood in the back of the roadster and on the running board. When Hopper was asked about the blood on the car he said, "You will have to ask Bacchetti." In the Bacchetti home the officers found in a wash tray a pair of overalls, a shirt and towel. Blood was found on the side of the wash tray. On Hopper's shirt and overalls was found blood and hair. At the Hopper home under a box in the back yard was found a piece of beef lung, and buried beneath the ground near the corner of the house was found fresh beef lung, and in the yard a dog was eating a large piece of neck meat of a young animal. A neighbor testified she saw Mrs. Hopper burying something near the corner of the house about 8 o'clock on the morning of the 23d.

In the rear of the Bacchetti home some days later was found meat and ribs of beef. The officers found the imprint of an automobile tire near a break in the fence of the complaining witness, and where blood was found on the ground, and upon comparison of the imprint and the Hopper car, found they were similar.

A chemist testified the blood stains on the clothes and car were from a bovine animal. Another witness called as an ex-

pert, testified the piece of lung and the pieces of meat submitted in evidence were from a calf.

We believe that this evidence, with other evidence of a similar nature found in the record, and certain evasions in the answer of the defendants, is sufficient to justify the verdict of the jury.

Appellants also claim that the trial court abused its discretion in denying them probation. This is a matter, however, vesting largely in the discretion of the trial court. The record shows that the application for these defendants was referred to the probation officer, and he reported, showing that both of these men had, on previous occasions, been arrested on charges of disturbing the peace and assault and battery. It would require a very strong showing of abuse on the part of the trial court to warrant any interference in its order denying an application for probation, and no such abuse is here shown.

In view, therefore, of the entire record, we are of the opinion that the defendants were fairly tried and fairly convicted, and that no error of sufficient magnitude has been here shown to justify a reversal.

The judgment and order appealed from are therefore affirmed.

Thompson, J., and Plummer, J., concurred.