[Crim. No. 3692.   Second Dist., Div. One.   July 12, 1943.]

THE PEOPLE, Respondent, v. EUNICE E. RUSSELL, Appellant.

Walter L. Gordon, Jr., for Appellant.

Robert W. Kenny, Attorney General, and Alberta Belford, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County, defendant was accused of the crime of assault with a deadly weapon. A jury found him guilty and this is an appeal by him from the judgment.

Defendant had been working as a "burner" at the California Shipbuilding Corporation in Los Angeles County and the complaining witness, Arthur Warner, was his foreman. On the morning of November 4, 1942, defendant and complainant became embroiled in a heated argument as to whether defendant would perform a certain type of work assigned to him by his foreman. When the defendant refused to perform the work assignment given him by the complaining witness he threatened to discharge the defendant, whereupon the latter applied a vile epithet to the foreman and demanded his wages. The two then went together to the company office to get defendant's pay for him. They both entered the office and defendant testified that the foreman cursed him and ordered him to leave the office. In any event, defendant made his exit and stood just outside the office door from which location, according to the complainant, the defendant continued to address vile and opprobrious names to the complaining witness. The latter testified that just as he stepped out of the office the defendant was standing in a "hunched position" and suddenly "turned and jumped and hit me." The complainant further testified that he struck the defendant "after he struck me, or at the same time he moved toward me, at the same time." As a result of this encounter the complaining witness received a jagged wound in his cheek, requiring eleven stitches, and which was admittedly inflicted by the defendant with the aid of a small 2½ inch fingernail file which folded up like a jack-knife. Another witness testified that he heard the defendant inviting the complainant to come out of the office, at the same time using foul and vile language and

threatening "I will show you something, or I will beat you up, or words to that effect." Still another eye witness to the fracas testified "Warner just stepped down off one step to the right and I saw Russell ahead of him, facing him, make one swing at him."

The defendant set up the plea of self-defense and after testifying to the disagreement between himself and the complainant with reference to the type of work defendant was asked to do, he testified that the complainant discharged him and told him to go to the office to get the wages due him; that they both entered the office, whereupon the complainant cursed the defendant and ordered him to get out of the office; that he complied with that request and stood "right outside the door"; that he was in a weakened physical condition, having received some 59 blood transfusions. That the complaining witness ran out of the office and struck him between the eyes. Defendant further stated that he fell upon the "burning table"; that he was excited and scared; that the complainant grabbed hold of him and again struck him. Defendant testified that he had the fingernail file in his hand during the melee and with it inflicted the injuries which gave rise to this prosecution.

█ It is first contended by appellant that the court erred in refusing to give the following instruction: "The Court instructs the Jury that a person in the exercise of his right of self-defense not only has a right to stand his ground and defend himself when attacked, but he may pursue his adversary until he has secured himself from danger." In refusing to give this instruction, the court did not err. Defendant himself testified "I hit him and just ran, tried to get away from him." All of the testimony is in harmony with the conclusion that the defendant struck but one blow and ran away. There is not an iota of evidence that he attempted to or did "stand his ground" or "pursue his adversary." The court fully and fairly instructed the jury on the law of self-defense; that a person assailed has the right to repel force with force; that he may employ the right to defend himself from apprehended danger to any extent which to him is apparently necessary, when he acts in a reasonable manner. The jury was also admonished that though they found it to be a fact that the complainant was not armed with any weapon at the time of the combat, nevertheless, that did not deprive the defendant of his right to defend himself with that degree of force which

to a reasonable man might have appeared necessary under the appearances and circumstances there present.

It is next urged that the court erred in giving the following instruction: "To justify a homicide committed by one in resisting or repelling an assault or battery committed or attempted to be committed upon his person by another, it must appear to the slayer as a reasonable man that the danger threatened, if any, was immediate and sufficient to excite the fears of a reasonable person that he was in danger of receiving death or great bodily harm, and that he acted under the influence of such fears and not in a spirit of revenge; and it must further appear that the degree of resistance was not clearly disproportionate to the nature of the injury offered or given—that the force used in repelling or resisting the assault or battery was not clearly greater than was apparently necessary."

Appellant contends that the instruction, while being a correct statement of law in homicide cases, had no application to the case at bar wherein the defendant was not accused of murder, manslaughter or assault with intent to commit murder, and that the giving of such an instruction was prejudicial in that by it the court led the jury to believe that the defendant intended to murder the prosecuting witness. This claim is without merit. It would do violence to reason and challenge credulity to assume that the jury was at all impressed that in an assault committed with a fingernail file in the manner and under the circumstances which characterized this controversy that the defendant contemplated or attempted to slay his adversary. Over a long period of time it has been the established rule in this state that the giving of instructions, correct in the abstract, but inapplicable to the issues raised by the pleadings or the evidence in the instant case, will not constitute a ground for reversal where no prejudice results to the defendant. (*People* v. *Boggs,* 12 Cal.2d 27, 37 [82 P.2d 368]; *People* v. *Soules,* 41 Cal.App.2d 298, 313 [106 P.2d 639]; *People* v. *Hopper,* 20 Cal.App.2d 108, 111 [66 P.2d 459]; see also section 4½, article VI, Constitution of California.) We cannot presume error from the mere giving of such an instruction and the burden is upon the appellant to show prejudice, if any. The assumption, if not the presumption, is that an instruction having no application to the case as made by the pleadings and proof does not injure a defendant.

Finally appellant asserts with great earnestness that

the evidence is insufficient to support the judgment of conviction and that the verdict is against both the law and evidence. The gist of this argument rests upon the claim that the fingernail file utilized by the defendant in making the assault was not as a matter of law a deadly weapon; and in any event the same was lawfully used by the defendant while acting in necessary defense of his person from an unwarranted attack made upon him by the complaining witness. Upon the last mentioned issue of self-defense the jury found against the defendant, and as such finding is supported by substantial evidence, we are not empowered to disturb it. That the weapon used in the case at bar may be said not to be inherently a dangerous or deadly one may be conceded, but nevertheless, it may become such a dangerous and deadly weapon if used in such a manner as to produce great bodily injury. ■ It has long been the established rule that in determining whether an instrument, not inherently deadly or dangerous, assumes these characteristics, recourse may be had to the nature of the weapon, the manner of its use, the location on the body of the injuries inflicted and the extent of such injuries. ■ When the question arises whether the instrument used was one such as would be likely to produce great bodily harm dependent upon the manner of its use, the portion of the body upon which it was used and the extent of the injuries inflicted, there is presented a mixed question of law and fact as to whether upon the particular occasion it was a deadly weapon. That question must be determined by the jury under appropriate instructions from the court. Therefore, the determination as to whether under all the facts and circumstances present in the instant case, the instrument used was a deadly weapon was for the jury (*People* v. *Cook*, 15 Cal.2d 507, 516, 517 [102 P.2d 752].) ■ We are persuaded that under the evidence before them the jury herein was entitled to find as they did that the character of the fingernail file as a deadly weapon, upon the occasion here in question, was established.

No prejudicial error appearing in the record herein, it is ordered that the judgment be affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 9, 1943. Carter, J., and Traynor, J., voted for a hearing.