[Crim. No. 7045. Second Dist., Div. Two. May 18, 1960.]

THE PEOPLE, Respondent, v. GERALD GLEN BOYDEN, Appellant.

Gerald Glen Boyden, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David Cadwell, Deputy Attorney General, for Respondent.

HERNDON, J.—Appellant was accused of armed robbery, of a former conviction of the Federal Dyer Act and of a former conviction of receiving stolen property. Appellant at first denied, but later admitted, the former convictions. After a jury trial, he was found guilty of robbery in the first degree. He appeals from the judgment of conviction.

Mr. Laumann, a cashier and weighmaster at the Finkelstein Supply Corporation at Del Amo and Alameda Streets in Los Angeles testified to the following effect: Shortly after 12:30 p.m. on August 19, 1959, Laumann was standing in the scale house of the Supply Corporation when he observed appellant drive up, park his car on the west side of the building and then approach the north window of the building. Laumann went to the window as appellant approached and inquired of appellant whether he could help him; whereupon, appellant handed Laumann a note. Before Laumann finished reading the note, appellant snatched it from his hand and demanded that he give him all the money he had. Simultaneously, appellant produced a revolver, pointed it at Laumann and repeated his demand for the money. Laumann gave appellant $3,866 which was in the cash box in the form of currency of various denominations. Mr. Laumann observed appellant re-enter his car and leave the area of the scale house. He observed that appellant was driving a black four-door Buick sedan from which the rear license plate had been removed.

Officer Jordan, a Long Beach police officer and appellant's first cousin, testified that on the day of the robbery at about 1 p.m. appellant came to him and asked if he could speak to him privately. Appellant thereupon related to Jordan that earlier that morning appellant had borrowed Jordan's car, a black Buick sedan, and his service revolver and had used them in the commission of a robbery. Appellant related that he had removed the rear license plate from the automobile. He then handed Jordan $100 in ten dollar bills, telling him that this amount was for him; he then gave Jordan another

$100 in tens, requesting Jordan to give it to his (appellant's) mother. He explained that he did not want to give it to her himself because she might be suspicious as to how he had "come by" the money.

Officer Jordan further testified that after his conversation with appellant on the afternoon of August 19th, he went to the Long Beach police station, contacted the Chief of Police and related the story of the robbery. Thereafter, Captain Thornberry and Inspectors Wiggins, Bennett and Ragsdale accompanied Jordan to appellant's residence. The officer met appellant at the doorway of his apartment, whereupon Officer Ragsdale informed appellant that he was under arrest for the robbery of Finkelstein's. Jordan thereupon stated to appellant, "You had too big a monkey on my back; I had to turn you in." To which appellant responded, "Okay, okay." Officer Ragsdale thereupon removed $125 in currency from appellant's pocket. Upon searching appellant's room, the officers found $2,160 in currency in a bureau drawer.

On the following day, August 20th, appellant freely confessed the robbery to Officer Culshaw, a deputy sheriff of Los Angeles County. This confession was reduced to writing and was signed by appellant. After appellant had signed the confession, the officers drove him past the Finkelstein place of business and appellant stated that this was the place that he had held up on the previous day. He stated at that time that the money which the officers had recovered from his apartment was money that he had taken during the course of the robbery. He stated that he had purchased an automobile from the Holmsen agency with money taken in the robbery.

In the trial of this case, and on this appeal, appellant acted as his own attorney. He cross-examined the several witnesses called by the prosecution, but otherwise he put on no defense. He did not himself take the stand.

Appellant's first contention is that the trial judge committed prejudicial error in refusing to disqualify himself pursuant to appellant's oral request made at the opening of the trial. The record reveals that when the judge inquired of appellant whether he wished to admit or deny the alleged prior convictions, appellant stated: "Well, I wonder if we could have another Judge?" to which the Court responded "No, you can't. The matter is assigned to me, and I have to try it." Appellant then declared, "I thought I had the right to ask for another Judge." Appellant then repeated his request which the judge again rejected.

In order to disqualify a trial judge it is necessary to comply substantially with statutory provisions requiring the filing of an affidavit alleging prejudice. (*Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 182-183 [281 P.2d 250]; *People* v. *Bompensiero*, 142 Cal.App.2d 693, 696 [299 P.2d 725]; *Johnson* v. *Superior Court*, 50 Cal.2d 693, 697 [329 P.2d 5]; *Jacobs* v. *Superior Court*, 53 Cal.2d 187, 190-191 [1 Cal. Rptr. 9, 347 P.2d 9].)

In the case at bar appellant gave no oral or written notice that he desired to challenge the trial judge because of any bias or prejudice. Although the 1959 amendment to section 170.6 of the Code of Civil Procedure (making it applicable to criminal cases) had become effective prior to the commencement of the instant trial, appellant evinced no purpose or intent to invoke its provisions. He did not offer to file any affidavit of prejudice nor did he suggest any purpose or desire to do so.

Appellant's second major contention is that the trial judge committed reversible error in making certain statements to the jury during the course of their deliberations. The record indicates that the jury retired for their deliberations at 11:58 a. m. and that they returned to the courtroom at 4:03 p. m. after having communicated their desire to have some of the testimony read. The statements complained of are included in the following excerpt from the record:

"THE COURT: I instructed you all the way through this proceeding that you should determine this case only from the evidence that is actually presented here from the witness stand, and you are not to assume or to make any insinuation from any questions that are asked and are not answered. You are to decide it from the evidence that is produced here in court, and that is all that you are to consider; and I think if you do not arrive at a verdict, you have not been following the instructions of the Court. Now, normally jurors go to a hotel at 4:30. Now, if you think you can arrive at a verdict in a short time, we will wait. Otherwise, you will go to the hotel and we will reconvene tomorrow morning. But I urge you to reconsider those instructions."

Appellant criticizes the quoted statements of the court on the ground that they indicated the judge's impatience with the jury and that they amounted to a plain intimation that the court thought the evidence in the case warranted a verdict of guilty and that the jury should so find. Appellant construes the court's statements as constituting "scolding" and as

threatening the jurors with being locked up unless they returned a verdict in a short time.

The determinative question presented by this assignment of error is whether the remarks of the trial judge complained of reasonably may be construed as amounting to coercion or as constituting an expression of the court's belief that the verdict should be against the accused. ■ The law on the subject is generally stated in 48 California Jurisprudence 2d 412, section 407, as follows: "Although the court may impress the jury with the necessity, in the interest of the state and of the defendant, of reaching a verdict, it is reversible error to urge or coerce the jury, in terms or in effect, to bring in a verdict of guilty, or, with knowledge of how the jurors are divided, to express the court's belief that the verdict should be against the accused. ■ Merely ordering the jury to retire for further consideration after they have announced that they are unable to agree does not, however, constitute coercion, nor does an inquiry directed simply to the numerical division of the jury or a direction that the jury make another attempt to analyze the evidence and arrive at some conclusion."

In *People* v. *Tarantino*, 45 Cal.2d 590 [290 P.2d 505], there was a lengthy jury trial and the deliberations of the jury proceeded over a period of two or three days. At one point the foreman of the jury informed the judge that they were divided 9 to 3 and that "we cannot agree on any count." The jury was nevertheless required to continue its deliberations and on the morning of the following day the foreman advised the judge that they stood 11 to 1 and "no chance of a change." Another juror had written a note to the judge saying "Any further argument is very likely to result in bodily harm to one or more jurors." After receiving this information the trial judge instructed the jury at some length to consider the case dispassionately, and said, "I might just say, and this is not a threat, that if any juror inflicts any bodily harm on any other juror, I certainly would take care of that situation and deal with it in a manner that would make the offender very sorry that the incident occurred, if it does occur. Now, that is not a threat; that is just a rather blunt statement, . . ."

On the following day the judge again received messages from the jurors indicating that they were still divided. At 4:30 in the afternoon of that day the judge called the jury into the courtroom and said: "Now, it is your duty, under your oaths as jurors, to deliberate, and to refuse to discuss the case further is a violation of your oaths as jurors. I know

that you have been very patient and have been here a long time, and maybe tempers wear thin, but it is your duty to deliberate until the court excuses you.'' After more than four hours of further deliberations, the jury returned with verdicts.

In holding that the remarks of the judge did not constitute coercion, or involve prejudicial error, the Supreme Court declared: ''There was nothing in the statements of the trial judge, representative portions of which are quoted above, which suggested an opinion as to what verdicts should be reached, nor was there any improper pressure upon the jury to agree. (Cf. *People* v. *Walker* (1949), 93 Cal.App.2d 818, 821-825 [209 P.2d 834], and cases there cited and summarized; *People* v. *Crowley* (1950), 101 Cal.App.2d 71, 75-78 [224 P.2d 748].) It does not appear that the judge required the jury to prolong their deliberations unduly, particularly in view of the fact that the trial had consumed 44 days. The judge dealt properly with the suggested 'bodily harm to one or more jurors.' We conclude that the record does not support defendant's claim that the verdicts were coerced.''

 We readily conclude that in the circumstances of the present case the questioned remarks of the judge may not reasonably be regarded as coercive or prejudicial. It is important to observe that the jury in this case had deliberated only approximately four and a half hours and that they had given no indication whatever as to how they had voted. Thus the judge's comments were not made in the light of any revelation as to how the jury stood divided. We see nothing in the judge's comments here which revealed any opinion on his part as to what the verdict should be. Neither do we think it fair to say that he employed coercive methods in telling the jury that unless they reached a verdict by a given hour they would be sent to a hotel in accordance with customary practice.

 We find no merit in appellant's contention that he was unduly restricted in his cross-examination of the witness Jordan. Appellant sought repeatedly to question Jordan about specific acts of immorality with various married women. The trial court correctly held that Jordan's moral character was not an issue in the case and that appellant was not pursuing a proper method of impeachment in propounding questions which related to patently collateral and extraneous matters.

 As we recently stated in *People* v. *Jones,* 177 Cal. App.2d 420, 424-425 [2 Cal.Rptr. 305]: ''Cross-examination on an immaterial matter is properly excluded by the court

(*People* v. *Newton*, 139 Cal.App.2d 289, 291 [293 P.2d 476]), and '. . . the party claiming that the court committed error by so restricting cross-examination "must show by the record some definite and legal purpose in the asking of the excluded question." [Citations.]' (*People* v. *Heinmann*, 174 Cal.App. 2d 270, 272 [344 P.2d 451].) ▮ Counsel's offer of proof must fully and clearly state 'the fact which counsel desires to prove and the manner and evidence by which he proposes to prove it. . . .' (Fricke, Calif. Evidence, 3d ed., p. 236; *People* v. *Monson*, 102 Cal.App.2d 308, 313 [227 P.2d 521].)''

Finally, appellant contends that "the conviction herein was obtained in violation of the due process clause of the Fourteenth Amendment of the United States Constitution" in that (a) appellant was not given adequate access to law books to enable him properly to prepare for trial; (b) his arrest was unreasonable, without probable cause and unauthorized; (c) appellant was not given adequate opportunity to interview his witnesses during the trial but was required to interrogate them in the rear of the courtroom.

None of these contentions finds any support in the record. Appellant's brief makes numerous broad assertions without any supporting references to the transcript. We find nothing in the record tending to show that appellant was unduly restricted in preparing his defense or that he made any complaint along these lines in the trial court or that he sought any continuance of the trial. ▮ It is elementary that an appellate court will not consider assignments of error based upon asserted matters not shown by the record and supported by nothing more than statements in appellant's brief. (*People* v. *Hernandez*, 150 Cal.App.2d 398, 402 [309 P.2d 969]; *People* v. *Villarico*, 140 Cal.App.2d 233, 236 [295 P.2d 76].) ▮ If appellant desired more time to prepare his case, he should have requested a continuance in the court below. By his failure so to do, he waived any objection in that regard. (*People* v. *Hopper*, 20 Cal.App.2d 108, 110 [66 P.2d 459].) Appellant's contention that his arrest was unreasonable and without probable cause finds no support in the authorities and is so obviously untenable as to require no further discussion. ▮ Likewise, appellant's complaint that he was unduly handicapped in the interviewing of his witnesses during the trial finds no support in the record. All that appears from the transcript is that appellant requested permission to interview his witnesses and that the court granted him that permission and suggested that he proceed to do so in the back

of the courtroom. The record does not indicate that appellant made any objection whatsoever to this procedure. Failure on the part of appellant to register any complaint or objection in the trial court constituted a waiver of any right to assign error upon the basis of the procedure followed. (*People* v. *Ray,* 146 Cal.App.2d 257, 259 [303 P.2d 591] ; *People* v. *Von Badenthal,* 8 Cal.App.2d 404, 412 [48 P.2d 82] ; *People* v. *Cohen,* 113 Cal.App. 260, 263 [298 P. 114].)

We conclude that appellant has wholly failed to establish the existence of prejudicial error. The record reflects an unusual cumulation of incriminating evidence upon which the trier of the facts could justifiably have relied with considerable confidence. It is to be noted that the victim of the robbery was positive in his identification of appellant. The witness Jordan testified that appellant made a full confession of the robbery at the same time handing over material evidence. Jordan's automobile and service revolver corresponded with the descriptions given by the victim of the robbery. On the day following his arrest appellant made and signed a full confession in the presence of a deputy sheriff. In the light of this and the other evidence which we have summarized, and in view of the fact that appellant did not take the stand to deny his guilt, we think the case against him may properly be characterized as a strong one.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied May 27, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1960.