[Crim. No. 7045.    Second Dist., Div. Two.    Oct. 26, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. GERALD
GLEN BOYDEN, Defendant and Appellant.

Earl Klein, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and C. Anthony Collins, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—This case now comes before this court for the second time, having once been decided in *People* v. *Boyden,* 181 Cal.App.2d 48 [4 Cal.Rptr. 869], filed May 18, 1960. We denied a rehearing on May 27, 1960, and our Supreme Court denied a hearing on July 12, 1960. Appellant's petition for writ of certiorari to the United States Supreme Court was denied by that court on April 3, 1961. (*Boyden* v. *California,* 365 U.S. 650 [81 S.Ct. 833, 5 L.Ed.2d 857].) Nevertheless, on August 26, 1964, we entered our order recalling the remittitur filed herein by reason of the dictate of *Douglas* v. *California,* 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811].

Counsel appointed by this court to represent appellant on this second appeal has performed his duties in an extremely conscientious and workmanlike fashion. He has been unable, however, to suggest the presence in the record of any error known to the law at the time the judgment herein first attained its status of ''temporary finality'' that appellant, in his in propria persona briefs and petitions, had not already presented for consideration to all the several courts that have passed on this matter heretofore. All of these assignments of error, of course, have been consistently rejected.

The case itself was a simple one. Following the commission of an armed robbery (1) appellant had been captured within hours thereafter in possession of the loot; (2) he had been positively identified by the victim; (3) the car and gun he had used in the robbery had been located and identified; (4) he had freely and voluntarily confessed to the crime, both orally and in writing; and (5) he presented no affirmative defense at his trial, neither calling any witnesses nor testifying himself.

It is with almost melancholy nostalgia that we recall how only five years ago it was possible to sustain a judgment of conviction entered in such a clear case of unquestionable guilt

and to accomplish it without undue strain. Today, however, the situation is vastly changed. Although appellant's conviction was effected by police and judicial procedures which conformed in every respect with the requirements of then established law, he presently argues that he was deprived of several fundamental constitutional rights that demand reversal of the judgment herein.

Appellant urges the application of the rules involving (1) prosecution comment and jury instruction regarding his failure to testify (*Griffin* v. *California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106]); and (2) failure of the police to advise him of his constitutional rights to remain silent and to have the services of counsel before receiving his voluntary confession. (*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361].) He also notes that the giving of an instruction concerning the admissibility of involuntary admissions, as opposed to confessions, was held to be improper in *People* v. *Atchley,* 53 Cal.2d 160 [346 P.2d 764], decided only a month after the entry of the judgment herein.

If it were a question open to our examination, we would seriously consider the merit of respondent's contention that the nature of an order recalling a remittitur[1] is such that we are not now required to give a pragmatically retroactive effect to such decisions as *Griffin* v. *California, supra,* 380 U.S. 609, and *People* v. *Dorado, supra,* 62 Cal.2d 338.[2]

However, the procedural histories of *People* v. *Benavidez,* 233 Cal.App.2d 303 [43 Cal.Rptr. 577], and of the present case are essentially the same, and in *Benavidez* the *Dorado* rule was applied. Since a hearing by the Supreme Court was denied in *Benavidez,* the judgment therein stands "as a decision of a court of last resort in this state, until and unless disapproved by [the Supreme Court] or until change of the law by legislative action." (*Cole* v. *Rush,* 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137]. See also, *Estate of Brissel,* 218 Cal.App.2d 841, 844 [32 Cal.Rptr. 458]; *Housing Authority* v. *Peters,* 120 Cal.App.2d 615, 616 [261 P.2d 561].)

In any event, we have concluded that the judgment once

---

[1]Cf. *In re Martin,* 58 Cal.2d 133, 141 [23 Cal.Rptr. 167, 373 P.2d 103]; *People* v. *Randazzo,* 48 Cal.2d 484, 487 [310 P.2d 413]; *Southwestern Inv. Corp.* v. *City of Los Angeles,* 38 Cal.2d 623, 626 [241 P.2d 985]; Witkin (1963) California Criminal Procedure, §§ 770, 771, pages 746-748.

[2]Cf. *In re Nathaniel Gaines,* 63 Cal.2d 234, 236-240 [45 Cal.Rptr. 865, 404 P.2d 473]; *In re Lopez,* 62 Cal.2d 368, 378-379 [42 Cal.Rptr. 188, 398 P.2d 380]; *Linkletter* v. *Walker,* 381 U.S. 622 [85 S.Ct. 1731, 14 L.Ed.2d 601].

again should be affirmed. ■ The record before us discloses that almost immediately after committing the instant robbery appellant proceeded to the residence of his cousin, Warren Jordan, a Long Beach police officer. At the trial in this matter, after the robbery victim had identified appellant as the man who had robbed him and identified the car and gun used in the robbery, Officer Jordan was examined and gave the following testimony:

"Q. Did Mr. Boyden come to your residence? A. Yes, that's correct. Q. At that time, sir, did you have a conversation with Mr. Boyden? A. Yes, sir, I did. Q. Just the two of you were present at that time? A. Yes, sir, that's right. Q. What was said by Mr. Boyden and by yourself? A. Well, he asked me to speak to me privately. We went to my room, and he— you want me to relate the conversation, is that it? Q. Yes.

"A. He explained to me that he had borrowed my car and had also borrowed my service revolver and had committed a robbery; that he had removed the rear plate from my automobile, and he at that time proceeded to hand me $100 in tens and he explained to me that that was for me. Then he gave me another $100 in tens and told me to give that to his mother. He stated he didn't want to give it to her because she might become suspicious as to how he had come by the money. Q. Is that about the substance of that conversation? A. Yes. He turned around and left then."

Officer Jordan then identified his gun that appellant had returned to him and the picture of his automobile, both of which theretofore had been identified by the robbery victim. Continuing his testimony, Officer Jordan related how, after calling upon the mother's physician to explain to him that appellant's mother would be experiencing a strain that might affect her heart condition by reason of the fact that he was planning to arrest her son, he proceeded to contact his police chief. Before this time the robbery report had been received at the station on the police teletype.

Officer Jordan accompanied his fellow officers to appellant's residence. One of the other officers testified that as appellant was being arrested, Officer Jordan had told him, "You had too big a monkey on my back; I had to turn you in." To this appellant replied, "Okay, Okay." Officer Jordan then departed and the other officers recovered the stolen money from appellant's room, together with other evidentiary items. These officers testified that appellant thereafter freely and voluntarily repeated his confession and supplied a few additional

details as to the disposition he had already made of a portion of the stolen moneys.[3]

We consider it beyond question that appellant's initial confession to Officer Jordan was properly received in evidence. It is expressly stated in *People* v. *Dorado, supra,* 62 Cal.2d 338, 354, that "any statements obtained without coercion, *including, of course, the unsolicited, spontaneous confession,* given in the absence of the requirements for the accusatory stage, may be admitted into evidence." (Italics added.) ██ Conceding for purposes of discussion that it was erroneous to introduce the subsequent repetitions of this confession, a reversal is not required for it is manifest that such error "did not produce a miscarriage of justice which would make a different result probable on retrial. [Citation.]" *(People* v. *Ford,* 234 Cal.App.2d 480, 495 [44 Cal.Rptr. 556], hearing denied.) The recent decisions of our Supreme Court in *People* v. *Jacobson,* 63 Cal.2d 319 [46 Cal.Rptr. 515, 405 P.2d 555], and *People* v. *Cotter,* 63 Cal.2d 386 [46 Cal.Rptr. 622, 405 P.2d 862], support the foregoing conclusion.

A similar disposition may be made of appellant's assignment of error concerning the fact that an instruction similar to that condemned in *Griffin* v. *California, supra,* 380 U.S. 609, was given to the jury. ██ As stated in *People* v. *Bostick,* 62 Cal.2d 820, 823 [44 Cal.Rptr. 649, 402 P.2d 529]: "Such error, unless it resulted in a miscarriage of justice, does not, however, automatically require a reversal if article VI, section 4½, of our Constitution is applicable to it. We are of the opinion that such section is applicable." (Cf. also, *People* v. *Teale,* 63 Cal.2d 178, 197 [45 Cal.Rptr. 729, 404 P.2d 209]; *In re Nathaniel Gaines, supra,* 63 Cal.2d 234, 237.)

In the instant case, the prosecuting attorney did not even mention the instruction or appellant's failure to testify during his opening argument. He made only a brief reference to it in his closing argument and this solely because appellant, who was acting as his own attorney, practically had demanded such comment by reason of his repeatedly attempting to use his own argument as a substitute for testifying in his own

[3]Appellant's written confession was entirely in his own handwriting and simply stated: "Aug. 20, 1959. While drinking on Aug. 19, 1959, I robbed a junk yard in Dominguez. I borrowed my cousin's car without his knowledge and sought employment at the Calif. Dept. of employment. Unable to obtain work and pay my bills, I robbed the junk yard of some money. I'd like to confess as soon as possible and get it over with, without causing any more embarassment [*sic*] to my friends and relatives. Gerald Glen Boyden."

behalf. That is, he sought by argument to introduce numerous charges and accusations which were wholly outside the record and would have been admissible, if at all, only if he had chosen to testify during the trial.

■ In view of the overwhelming evidence of appellant's guilt presented to the jury, it is manifest that even in the absence of such an instruction and the prosecution's brief and invited comment thereon, the jury's verdict could not reasonably have been different. (Cf. *People* v. *Jacobson, supra,* 63 Cal.2d 319, 333.)

■ Finally, appellant's assignment of error regarding the giving of an instruction on the admissibility of involuntary admissions, as opposed to confessions, does not require reversal. The instruction was wholly irrelevant because no admissions were made by appellant that were not integral parts of his confessions, and, even as to these, there was absolutely no evidence introduced during the trial tending to show that they were involuntary in nature. It is practically inconceivable that this needless instruction could have affected the jury's verdict in any particular, and, as previously indicated, this verdict certainly did not constitute a miscarriage of justice.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1965. Mosk, J., did not participate therein.