Filed 2/2/15  P. v. Chang CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B253472 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. VA112634) |
| KAI CHANG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas McKnew, Judge.  Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Kai Chang appeals from a judgment of conviction for assault with a deadly weapon and aggravated mayhem. He argues the evidence was insufficient to support his conviction for assault with a deadly weapon. We disagree and affirm.

## FACTS

### 1. Prosecution Evidence

Dr. Alex Sahba is a psychiatrist at Metropolitan State Hospital in Norwalk. He had been appellant's psychiatrist for approximately two years in October 2009. Blood tests were required to monitor appellant's medication levels. On October 13, 2009, Dr. Sahba went to appellant's room with a psychiatric technician and asked appellant to cooperate in giving blood for these tests. Dr. Sahba spoke to appellant in English; appellant had spoken English to the doctor many times in the past. Initially, appellant said something like, "I don't speak English. I don't understand you." Appellant then refused to give blood and asked the doctor to leave the room (in English). He appeared angry with Dr. Sahba.

Dr. Sahba left appellant's room and went to the nursing station. Approximately five to 10 minutes later, he saw appellant standing outside the glass door of the nursing station, waving and asking for the doctor. Appellant called out to Dr. Sahba and said, "I want to talk to you. I want to talk to you. . . . I'll take it. I'll take it." Dr. Sahba opened the door of the nursing station, and before he could say anything, appellant started kicking him in the leg and grabbing his hand. Appellant scratched his hand and arm and also tried to punch him. Appellant swung at the doctor several times, and the doctor assumed "a defensive posture." Appellant then grabbed a "Pilot" "rolling ball extra fine point" pen from Dr. Sahba's shirt pocket, took off the cap, and stabbed him twice in the forearm with the pen. The tip of the pen was nonretractable, but appellant stabbed him hard enough that the tip went inside the pen. The pen punctured two holes in Dr. Sahba's sleeve and broke Dr. Sahba's skin. Other staff arrived in response to an alarm set off when appellant attacked Dr. Sahba, and the staff members were able to contain appellant on the floor and grab the pen from him.

2

Two days later, on October 15, 2009, appellant attacked Dr. Sahba again. The doctor was sitting at a table in the day hall, where patients can move about freely, interviewing another patient. He suddenly felt a squeezing or pressure on his neck and realized that someone had put him in a choke hold. A second later, he felt a pain on his left ear. Other staff rushed to help and dragged appellant off Dr. Sahba. The upper part of Dr. Sahba's left ear was missing. He had blood running down his shirt and pants. Someone found the missing piece of his ear on the floor. He went to the emergency room, but doctors could not reattach the piece of ear. Dr. Sahba had five plastic surgeries over a year and a half to reconstruct his ear.

## 2. *Defense Evidence*

Appellant testified at trial. In China, appellant was a medical doctor. Dr. Sahba was "very jealous" of appellant and would not allow him to learn English at the hospital. Appellant nevertheless taught himself to write English, but he could not speak it well. He could not communicate well with Dr. Sahba because of the language barrier.

The incident on October 13 with which he was charged did not happen. The incident on October 15 happened because appellant's life was in danger. Dr. Sahba wanted to increase appellant's dosage of medication without checking his medical history. Appellant did not need medication.

## PROCEDURE

The information charged appellant with one count of assault with a deadly weapon, to wit, a pen (Pen. Code, § 245, subd. (a)(1)),[1] and one count of aggravated mayhem (§ 205). In November 2010, the court found appellant mentally incompetent to stand trial. In March 2013, the court found appellant mentally competent to stand trial within the meaning of sections 1368 and 1370. The court granted appellant's request to proceed in propia persona.

---

[1] Further undesignated statutory references are to the Penal Code.

In pertinent part, the court instructed the jury on assault with a deadly weapon and the lesser included offense of simple assault, as well as aggravated mayhem and the lesser included offenses of mayhem and battery causing serious bodily injury. The jury convicted appellant of assault with a deadly weapon and aggravated mayhem. The court sentenced appellant to life in state prison with the possibility of parole on the aggravated mayhem count, and a concurrent three years in prison on the assault with a deadly weapon count. Appellant filed a timely notice of appeal.

## DISCUSSION

Appellant contends we should reverse his conviction for assault with a deadly weapon or reduce it to simple assault because there was insufficient evidence the pen was a deadly weapon. We disagree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . [Citation.] We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Section 245, subdivision (a)(1) punishes assaults committed with a deadly weapon or instrument other than a firearm. "One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument . . . , whether the victim in fact suffers any harm is immaterial." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)

4

"As used in section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.'" (*People v. Aguilar, supra*, 16 Cal.4th at pp. 1028-1029.) "Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.)[2] "Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citations.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*People v. Aguilar, supra*, at p. 1029.) Although neither physical contact nor injury is required, if injuries result, the location of the injuries and their extent are relevant considerations. (*People v. Russell* (1943) 59 Cal.App.2d 660, 665.)

Courts have found many different objects to be deadly weapons or instruments. For example, in *In re Jose R.* (1982) 137 Cal.App.3d 269 (*Jose R.*), the court held there was substantial evidence apples with pins deliberately concealed in them constituted deadly weapons. (*Id.* at p. 275.) Though the victims did not ingest the concealed pins, the evidence demonstrated an ingested pin was medically dangerous to a human being and potentially life-threatening. (*Id.* at p. 276.) In *People v. Simons* (1996) 42 Cal.App.4th 1100 (*Simons*), the court held a screwdriver was a deadly weapon when the defendant held officers at bay by waving the screwdriver at them while taunting them to

---

[2]    Here, the court instructed the jurors that "[a] deadly weapon other than a firearm is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." The instructions defined "great bodily injury" as "significant or substantial physical injury." These instructions correctly set out the law.

"go ahead" and kill him. (*Id.* at pp. 1106-1107.) In *People v. Page* (2004) 123 Cal.App.4th 1466 (*Page*), the court determined the defendant used a sharpened pencil as a deadly weapon when she held it to the neck of the robbery victim and threatened him not to involve the police. (*Id.* at pp. 1469, 1473.) The court held threatening to stab the victim with a "hard, sharp, pointy" object was sufficient, even though she did not actually injure the victim. (*Id.* at pp. 1472-1473.) And in *People v. Brown* (2012) 210 Cal.App.4th 1 (*Brown*), the court determined there was substantial evidence a BB gun was a deadly weapon when the defendant shot the victims from a range of approximately five feet, one on the foot and one on the back, even though the victims suffered only welts. (*Id.* at pp. 5, 8.) Because the victims threw themselves to the floor when they saw the BB gun, the jury could have easily inferred the location and severity of the injuries were fortuitous, and the victims could have sustained serious injuries in the face, had they not leapt to the ground. (*Id.* at p. 8.)

Like in *Jose R.*, *Simons*, *Page*, and *Brown*, there was substantial evidence the instrument used here was a deadly weapon on the facts of this case. Appellant used the pen in such a manner as to be capable of producing and likely to produce great bodily injury. The pen was a hard, sharp, pointy object (*Page, supra*, 123 Cal.App.4th at p. 1472) that appellant used to puncture Dr. Sahba's shirt and break the skin of his forearm. Appellant contends there was no evidence he intended to stab the doctor anywhere other than the forearm. This is not the case. The pen-stabbing was only part of the attack. Appellant descended on Dr. Sahba unexpectedly and began kicking and punching at him before grabbing the pen. As a result, Dr. Sahba had assumed a defensive posture. The jury could have reasonably inferred that appellant only stabbed Dr. Sahba in the forearm because the doctor was shielding himself with his arms, not because appellant was specifically targeting the forearm. As in *Brown*, it was merely fortuitous that appellant did not inflict more or different harm. Appellant further contends the pen was not capable of producing great bodily injury because appellant's stabbing drove the point down into the shaft of the pen. But the pen punctured the doctor's shirt and broke his skin before this happened. The pen was certainly capable of producing significant or

6

substantial injuries if it stabbed tissues softer than the forearm, such as the face, eye, or neck. Further, the fact that Dr. Sahba did not suffer more serious injuries is not dispositive. An assault is complete once the victim is threatened with the weapon, even without actual physical contact. "When an instrument is capable of being used in a dangerous or deadly manner and it may fairly be inferred from the evidence in a specific case that the defendant intended so to use it, its character as such a weapon is established." (*People v. Claborn* (1964) 224 Cal.App.2d 38, 42.) It may be fairly inferred from the evidence that appellant intended to use the pen in a dangerous manner, especially because he purportedly believed Dr. Sahba was endangering his life by medicating him. He was thus reacting to what he believed was a life-threatening situation. On these facts, substantial evidence supported the jury's finding of assault with a deadly weapon, that is, an instrument capable of producing and likely to produce great bodily injury.

Appellant urges this case is "nearly parallel" to *In re Brandon T.* (2011) 191 Cal.App.4th 1491, 1495, in which the court held there was insufficient evidence a butter knife was a deadly weapon. *Brandon T.* is distinguishable. There, the minor touched the butter knife to the victim's cheek and throat while two other boys held the victim down. (*Id.* at p. 1494.) He moved the butter knife up and down the side of the victim's cheek "'in a slashing motion.'" (*Ibid.*) He tried two times to cut the victim's face and tried to cut the victim's throat, but the handle of the butter knife broke off. (*Ibid.*) The victim suffered only welts and a small scratch. (*Id.* at pp. 1494-1495.) The court held the butter knife was not capable of producing great bodily injury because the minor could not have inflicted greater harm if he "tried a bit harder." (*Id.* at p. 1497.) The butter knife broke from the pressure applied, and that pressure was not enough to even penetrate the layers of the victim's skin. Moreover, the butter knife was not a sharp, pointy object; it had a rounded end. (*Id.* at pp. 1497-1498.) Here, the instrument was sharp and pointy, was capable of breaking skin and the material of the victim's shirt, and was used in a more indiscriminate attack, suggesting appellant could have stabbed the victim in much more

vulnerable areas of the body. We see no reason to reverse the jury's finding on the basis of *Brandon T.*

## DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.


8